## State *versus* Patrick Furlong.

To sustain an indictment for larceny, proof must be adduced that the goods alleged to be stolen are the absolute or special property of the person named as owner in the indictment, and that a felony has been committed.

In an indictment for stealing three sides of sole leather, the property of A. B. when the alleged owner testifies that he could not swear positively that " he had lost leather, or that he had not sold the same leather to some other person than the defendant " — this is not sufficient proof that the ownership of the property taken was at the time of the taking, in the person described as owner in the indictment.

Proof that the person charged with a larceny, was poor, and that for years before he had not been the owner of property to the amount alleged to be stolen — that he made false statements as to where he obtained the property, and that when selling it, he called himself by a wrong name — and that he did not, or could not give any account how he came by the property — though tending strongly to implicate his integrity — has no tendency to prove the ownership of the property stolen — as alleged.

Exceptions from the District Court.

This was an indictment for larceny alleged to have been committed by the defendant in taking and carrying away three sides of sole leather, the property of one Ezra Eastman, of Limerick, on the 23d day of October, A. D. 1839.

To prove the facts charged in the indictment, Ezra Eastman was called, who testified that he could not positively swear that he had lost leather, or that he had not sold the same leather to some other person than the defendant; but that previous to the time of taking, alleged in the indictment, he had thought, but could not swear, that he had lost leather. It further appeared that about October 25, 1839, said Eastman, after hearing of Furlong's having sold leather in Portland to one Hanson, took with him a side of leather of his own tanning and called on Hanson — that most of the leather purchased by Hanson of the defendant, had been sold, with the exception of a small remnant, and that one side had been sold, which was in Court at the trial. The witness testified that he thought the leather produced was of his tanning and had no doubt of it — but could not positively swear that it was.

It appeared from the testimony of Moses Eastman, a son of

the witness first called — that he had worked in the shop of his father during the past year and that he did not miss any leather, nor hear of any being missed. He further testified to the identity of the leather.

It appeared from the testimony of Hanson, who was a witness in the case, that Furlong called at his store in Portland, on the 23d day of October, 1839, and sold him three sides of sole leather, manifestly from the same tannery, the side produced being one of them — at nineteen cents a pound — that he asked the defendant his name — that the defendant gave his name, but it was not Furlong — but that he was the man from whom he purchased it — that defendant said the leather was tanned by one Kimball of Parsonsfield, of whom he thought, he said he purchased it — that it is easy for tanners to designate leather of their tanning — that when he paid defendant for the leather, he let him have a one dollar Calais bill, which he returned saying there was a discount upon it — and that he gave him another bill for it. There was other testimony to show the facility of discriminating between the leather from different tanneries.

It appeared in evidence that the defendant had never been employed in the sale, purchase or manufacture of leather, or had been the last eight or ten years in the possession of property to that amount at any one time. There was no evidence offered by defendant to show how he came by the leather.

WHITMAN J. who presided at the trial, instructed the jury that if the evidence satisfied them, that the leather must have come from Eastman's tannery, and had not been sold by him to the defendant; and that the defendant was destitute of property and could not be believed to have had three sides of sole leather in his possession without being able to give some account of how he came by them, consistently with his innocence, if he came by them fairly; and if they should be satisfied that he sold the leather to Hanson, calling himself by a wrong name and stated falsely as to where the leather was obtained by him, they might, as he had given no intimation as to how he

came by the leather, be justified by the rule of law in finding him guilty.

The jury returned a verdict of guilty and exceptions were filed to the instructions of the Court.

*Caverly*, for defendant — That there was no evidence that a larceny had been committed — there being no certainty that there had been any lost, without proof of which, the indictment could not be sustained. 4 Bl. Com. 359 ; 2 Starkie's Ev. 840 ; 2 Hale's P. C. 290 ; 2 East's P. C. 657. The circumstances proved are not sufficient to overcome the presumption of innocence. 3 Dane's Abr. 503 ; 2 B. & A. 386 ; 3 Bl. Com. 371 ; 4 Bl. Com. 289.

*Goodenow*, Attorney General, *contra*

The opinion of the Court was delivered by

EMERY J. — To suppress the commission of crimes, is one of the primary objects of the administration of criminal justice ; and nothing is more likely to accomplish this object, than the speedy detection and certain punishment of the offender. But still, as it is deemed of the highest consequence that a uniform application should be made of the rules of law in the trial of criminal offences, great care should be taken that no strong desires to advance imagined justice, and array in the most imposing manner evidence to bear it down in its concentrated form upon an accused person, as is right, should deprive him of all the protection which the law can extend to his case. Thus, every one is presumed, the law says, to be innocent, till the contrary be shown. It is possible that this defendant is guilty ; and if we sustain the exceptions, the result of another investigation may yet not be variant from that of which he now complains. With that, however, we have nothing to do. But with the facts reported, and the charge of the Judge to the jury, we must endeavor to discern the true course indicated by a long exposition of principles hitherto supposed of great importance in trials for larceny. It is essential, upon the trial, to prove that the defendant is the person who actually committed the offence. It may be by circumstantial evidence. It

must be proved that the goods alleged to be stolen are the absolute or special property of the person named as owner in the indictment. · This is so essential, that if he be described in the indictment as a certain person, to the jurors unknown, and it appears in evidence that his name is known, the defendant should be acquitted of that indictment, and tried upon a new one, for stealing the goods of the owner, by name. 2 East. P. C. 651 ; 3 Camp. 264. And in prosecutions for stealing goods of a person unknown, some proof must be given, sufficient to raise a reasonable presumption that the taking was felonious, or against the will of the owner ; for it is not enough that the prisoner is unable to give a good account how he came by the goods.

If a man lose goods, and another find them, and not knowing the owner, convert them to his own use, this is not larceny. 1 Hawk. c. 33, § 2. Even although he deny the finding of them, or secrete them. 1 Hale, 506. But it is otherwise if he know the owner. 2 Leach, 952 ; *Rex* v. *Wynne,* 2 East, 1664.

Generally, *wherever the property of one man, which has been taken from him,* without his knowledge or consent, is found upon another, it is incumbent on that other to prove how he came by it ; otherwise, the presumption is that he obtained it feloniously. 2 East's Cr. Law, 656.

But the bare circumstance of finding in one's possession, property of the same kind which another has lost, unless that other can, from marks or other circumstances, satisfy the Court and jury of the identity of it, is not, in general, sufficient evidence of the goods having been feloniously obtained. Though where the fact is very recent, so as to afford reasonable presumption that the property could not have been acquired in any other manner, the Court are warranted in concluding it is the same, unless the prisoner can prove the contrary.

Thus, a man *being found coming out of another's barn, and upon search, corn being found upon him of the same kind* with what was in the barn, is pregnant evidence of guilt. So persons employed *in carrying sugar and other articles from ships and wharves,* have often been convicted of larceny

at the Old Bailey, upon evidence that they were detected with property of the same kind upon them, recently upon coming from such places, although the identity of the property, as belonging to such and such persons, could no otherwise be proved.

But this must be understood *at least of articles like those above mentioned, the identity of which is not capable of strict proof from the nature of them;* for Lord Hale says, he would never convict any person of stealing the goods of one unknown, merely because he could not give an account how he came by them; unless *due proof were made that a felony had been committed of those goods.* Neither is the fact of concealment, *the identity of the property not being proved,* of itself, evidence of stealing, though undoubtedly very strong corroborative proof of it. 2 East's Cr. Law, 657.

The leather is alleged in the indictment to be the goods and chattels of Ezra Eastman. He testified, that he could not positively swear that he had lost leather, or that he had not sold the same leather to some other person than the defendant; but that previous to the 23d day of October, 1839, he had thought he had lost leather, but did not mention it to any one, and could not swear that he has lost any leather. One of the sides of leather which the defendant sold to Mr. Hanson, was brought into court at the trial, and compared with leather of said Eastman's tanning, and said Eastman testified that he thought the leather was of his tanning, and had no doubt of it, but could not positively swear that it was, although he thought he could designate leather of his tanning wherever he might find it.

The testimony of Moses Eastman, son of said Ezra, was, that he had worked in the shop of his father during the past year, but that he did not miss leather, or hear of any leather being missed, or suspected that any had been stolen, and that the said Ezra Eastman, during the said year, had tanned and sold leather to a large amount to various individuals in Limerick, and the neighboring towns, to the amount of several tons, but had sold no leather to the defendant. It further appeared in evidence, that the defendant was not a man of property,

and would not have been likely to have been the purchaser of leather to that amount, and had not been known to be possessed of property to that amount at any one time for ten years past. Said Moses Eastman testified to the identity of the side sold to Hanson, as having come from said Ezra's tannery.

Mr. Hanson, the purchaser, at Portland, of the leather from the defendant, asked defendant his name; the defendant told his name, but that it was not Furlong. Hanson further testified, that Furlong told him that the leather was tanned by Kimball of Parsonsfield, and he thought Furlong said he bought it of Kimball. The defendant was never employed in the sale, purchase, or manufacture of leather, nor was there any evidence offered by defendant to show how he came by the leather.

It appears to us that the evidence does not warrant the instructions given by the Judge, upon this indictment. Had the indictment included a count for stealing the goods and chattels of some person, to the jurors unknown, if proof were made that a felony had been committed, the facts reported might have justified the instruction. The question was not, solely, whether the three sides of leather came from Eastman's tannery, but whether, also, they were the property of Ezra Eastman. They might have been from his tannery, and yet not have been his property. He had in that year tanned and sold several tons of leather, to various individuals in the town of Limerick, and the neighboring towns. He could not positively swear that he had lost leather, or that he had not sold the same leather to some other person than the defendant; and Moses Eastman, said Ezra's son, who had worked in the shop of his father during the then past year, testified, that he did not miss leather, or hear of any leather being missed, or suspected that any had been stolen.

That the defendant was a poor man, and would not have been likely to have been the purchaser of leather to that amount, and had not been known to be possessed of property to that amount, at any one time, for ten years past — or even his calling himself by a wrong name, and stating falsely as to

where the leather was obtained by him, though strongly impli-
cating the integrity of his conduct, would not amount to proof
that this leather was the property of Ezra Eastman, even
though the defendant had the three sides of leather in his pos-
session, without being able to give some account of how he
came by them, consistently with his innocence, if he had come
by them fairly.

It is urged, by the defendant's counsel, that there is incor-
rectness in the remark of the Judge, "that the defendant had
given no intimation as to how he came by the leather," that
the instruction "was one sided, argumentative, tending to mis-
lead the jury." We are not aware of any rule of law which
prevents a Judge from expressing his sentiments as to the
evidence, and suggesting to the jury such views as may aid
them in coming to a right conclusion. To be sure, if he
should be so unfortunate as to do injustice to a defendant by
an argument tending to mislead the jury from a just consider-
ation of the evidence, or give a wrong direction in matter of
law, it is an event deeply to be lamented. The counsel of the
prisoner, however, can request specific instructions as to the
law, or take general exceptions.

It is not every false account which is given by an accused,
as to how he obtained an article, which is proved to have been
stolen, which will screen an offender. If the prisoner's confes-
sion is offered in evidence it must be taken altogether. Yet
it does not supersede the necessity of proof on his part how
he came by the article, when a *prima facie* case is made
out against him of having the property of the alleged owner
in his possession.

We perceive but little in the case to excite interest in favor
of the defendant. His omission to give account rouses sus-
picion. But that is not enough.

We apprehend it would be dangerous to let the doctrine
here in the instruction communicated to the jury, *be sanctioned
as the law upon this indictment*. And we feel bound to sus-
tain the exceptions. For we do not see but that any tanner
of extensive business who may have sold tons of leather man-

ufactured by him, on a suspicion, though not announced to any one, may upon finding a quantity of leather which was originally prepared at his tannery, in the possession of a poor man, where the possessor of it does not choose to give an account how he came by it, may cause the possessor to be indicted and under such an instruction convicted, when in fact none of the tanner's property may have been purloined, and if a conviction should take place, the tanner may obtain restitution of leather, which neither he himself nor any one for him can positively swear he has lost.

The verdict must be set aside and the cause remanded to the District Court for further proceedings.