**STATE of Maine**

v.

**Archie BARRETT.**

Supreme Judicial Court of Maine.

Sept. 5, 1969.

Stanley W. Brown, Jr., County Atty., Belfast, for plaintiff.

Gene Carter, Bangor, and Clyde R. Chapman, Belfast, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from judgment of conviction on charge of larceny.

There are 5 points of appeal, 3 of which have to do with the action of the trial court in fixing bail pending appeal. Inasmuch as the appellant has been unable to offer bail, counsel concedes that those points are moot, and have not been briefed.

The 2 remaining points question the refusal of the presiding Justice, at the close of the State's case, to direct a verdict for the appellant-respondent, contending lack of evidence to support a verdict of guilt. The motion was taken under advisement.

■ This motion for acquittal was not renewed at the close of all the evidence and therefore was not preserved for review on appeal, Rule 29(a) M.R.Crim.Proc., State v. Rowe, Me., 238 A.2d 217, 220, but the record supports the view taken by defense counsel, and not questioned by the State, that an unrecorded motion for acquittal was before the Court at the close of the case and was denied. In the light of this unchallenged posture of the case we review.

■ The points of appeal center in one broadly stated issue,—whether, assuming stolen and identifiable property, the evidence supports the presumption that its subsequent possessor is guilty of the larceny.

From State v. Furlong, 19 Me. 225, 228 and State v. Merrick, 19 Me. 398, 400 (1841) it has been the rule in Maine that:

"In prosecutions for larceny, where the goods are proved to have been stolen, it is a rule of law, applicable in these cases, that possession by the accused, soon after they were stolen, raises a reasonable presumption of his guilt. And unless he can account for that possession, consistently with his innocence, will justify his conviction. 'Evidence of this nature is by no means conclusive, and it is stronger or weaker, as the possession is more or less recent.'"

In subsequent cases applying this principle,[1] but for one, it is implicit that the accused was in exclusive personal possession of the stolen goods, and the court had no occasion to expand upon the character of other kinds of possession to which the rule properly might be applied.

In State v. Russo, 127 Me. 313, 315, 143 A. 99, 100, where the property was concealed in the home of the accused, our court said:

"Possession is not limited to actual custody about the person. It may be of things elsewhere but under the control of the person. It may be in any place where it is manifest that it must have been put by the act of the party or his undoubted concurrence."

Text law reiterates, as follows:

"(I)t must further appear that the possession was personal and that it involved a distinct and conscious assertion of possession by the accused. The possession must be exclusive, though it may be joint. Exclusive possession may be evidenced by the exercise of complete dominion and right of disposal by the defendant. The sense of the term 'possession' in this connection is not necessarily limited to custody about the person. It may be of things elsewhere deposited but under the control of a person. It may be in a storeroom or barn when the accused has the key. In short, it may be in any place where it is manifest it must have been put by the act of the party or with his undoubted concurrence. But the mere fact of finding stolen articles on the premises of a man of a family or in a place to which many others have free access, without a showing of his actual conscious possession thereof, discloses only a prima facie constructive possession and is not such a possession as will justify an inference of guilt by reason thereof." 32 Am.Jur., Larceny § 141.

"The personal, conscious, and exclusive possession of recently stolen property required for an inference or presumption of guilt generally necessitates actual, rather than constructive, possession by the accused; but the possession may be sufficient although the property is not in his physical or manual possession." 52A C.J.S. Larceny § 107 a.

The jury was presented with undisputed evidence that shortly after midnight of January 5, 1968 a window was broken in an electrical appliance store in Belfast and an identifiable Motorola television set was stolen by two unidentified men, noticeably of different heights, that the set appeared within 48 hours thereafter in a building in which the appellant lived in Belfast and thereafter the appellant exercised some dominion over it. It is this "possession" upon which the State relies to apply the reference presumption. The accused, to "account for that possession, consistently with his innocence" presented alibi witnesses, whose evidence, if believed, would free the accused from the presumption, not by explaining the "possession" as innocent but denying, by indirection, the larcenous taking. This alibi evidence presented the following areas of fact. The Barretts occupied a 3 room apartment on the third floor of the building in question. The accused (Barrett) had come home from work about mid-day of January 5th, not feeling well, cleaned up and remained about the apartment. The latter part of that afternoon guests arrived to observe the birthday of Mrs. Barrett's brother, which guests included ones Eldridge, Spencer, Smith, Colson and Harvey. Some beer was con-

1. State v. Saba and Korbett, 139 Me. 153, 27 A.2d 813, in which at page 158, 27 A. 2d 813, the court spoke in terms of a justifiable inference of guilt, instead of a presumption, consistent with the Federal rule. See Freije v. United States, 386 F. 2d 408 [1–3], 410; State v. Lizotte, Me., 230 A.2d 414, 418; and State v. Langley, Me., 242 A.2d 688.

sumed, some cards were played and Barrett retired about 10:00 p. m. The party continued until about 1 o'clock in the morning of January 6th. Smith and Colson remained in the apartment overnight. Mrs. Barrett, Spencer, Colson, Eldridge and Harvey gave testimony from which the jury was asked to conclude that Barrett did not leave the apartment the night of January 5-6.

Mrs. Barrett testified that the first time she was aware of the television set was its presence or its arrival, it is not clear which, in the shed associated with the apartment, which shed is reached by "walking up a stairway, three floors up," during the afternoon of January 7, 1968 and that it was brought there by one Willey, and one other, whom she did not know. Prior to Barrett's trial, Willey had confessed to the larceny. She further testified that Willey inquired "if we wanted to buy a TV." Smith volunteered that he knew where it could be sold. Willey and Smith went to get one Brown with his car and Willey and Barrett carried the set to Brown's car which, with Willey, Smith and Barrett as passengers, transported it to the home of one Wing. A sale of the set to Wing was negotiated, but by whom is not clear. Smith received payment for the set and gave a receipt for it. Smith and Barrett carried the set from the car to Wing's home. It is not clear whether Smith and Barrett carried the set into the house before or after the sale was negotiated.

Willey was called by the State only as a witness to rebut the defendant's alibi. With apparent reluctance he testified that Barrett was out of the Barrett apartment and was with him about 1½ hours on the night of January 5th and early morning of January 6th and that while together they "took a walk uptown." He denied offering the set for sale to Mrs. Barrett. There is no evidence of the comparative height of Willey and Barrett, but the jury was competent to observe the two men. See State v. Dorathy, 132 Me. 291, 294, 170 A. 506,

and State v. Rowe, Me., 238 A.2d 217 [7, 8], 222.

The record is silent as to the number of apartments in the building occupied by Barrett, whether or not the shed served any apartment other than that of Barrett, or whether the stairway leading to the third floor did or did not furnish common access from the street to the interior of the building.

The jury under appropriate instructions might have found that the accused was in constructive possession of the shed and its contents, but such possession alone is insufficient to raise the reference presumption. See State v. Boudreau, 111 Vt. 351, 16 A.2d 262 [5], 266 (1940); Castle v. Commonwealth, 196 Va. 222, 83 S.E.2d 360 [4], 364 (1954); and State v. Webb, 382 S.W. 2d 601 [2-6], 604 (Mo.1964).

If the presumption is supported it must rest on the possessive conduct of Barrett in helping Willey transport the set for purposes of sale. This conduct in the light of all the surrounding circumstances could be found to be an exercise of dominion, control and right of disposal jointly with Willey, or with Smith, or with both, soon after the larceny and amounts to the possession upon which a reasonable presumption of guilt can be founded. The refusal to direct an acquittal was no error.

The reasonableness of this presumption leading to a justifiable conviction for larceny is significantly bolstered by the testimony, pointing directly to the felonious act, that contrary to the alibi evidence, Barrett was with Willey "uptown" at the time of the larceny.

The jury did not accept Barrett's alibi and the evidence supports the verdict.

Appeal denied.

TAPLEY, J., sat at argument but retired before the opinion was adopted.