STATE of Maine

v.

Ralph E. MOSHER, Jr.

Supreme Judicial Court of Maine.

Nov. 6, 1970.

William Clifford, Jr., County Atty., Charles H. Abbott, Asst. County Atty., Auburn, for plaintiff.

James F. Cosgrove, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

WEBBER, Justice.

On appeal from a conviction by jury verdict of the offense of breaking, entering and larceny. At the close of the State's case the defendant elected to rest without presenting evidence. Motions for directed verdict of acquittal and for a new trial were seasonably presented and denied. Additionally a motion to suppress evidence was heard and denied by the presiding Justice. In the course of trial certain evidence was admitted over defendant's objection and portions of the instructions to the jury were challenged by defendant. The issues thus raised are before us on this appeal.

The State adduced credible evidence that between the hours of 7:00 P.M. on August 22, 1968 and 7:00 A.M. on August 23, 1968 a break occurred in Turner, Maine and certain new clothing was stolen from the burglarized store; that at 2:00 A.M. on the latter date a white 1960 Chevrolet bearing Maine registration #243–311 and containing three occupants was observed by a police officer in Lewiston, Maine, some eleven or twelve miles from Turner; that shortly after, the same car was observed at another location in Lewiston by another officer who was able to identify the operator as one Henry Poulin (co-defendant in this trial) but was unable to identify the other two occupants; that the car entered the ramp leading to the tollgate entrance of the Maine Turnpike in Lewiston; that the car was next seen leaving the Turnpike at the Auburn exit some five or six miles from where it had entered; that at about 2:40 A.M., still carrying three occupants, it reentered the Turnpike at the Auburn tollgate; that the car was next observed by a police officer in Somerset, Massachusetts, about 205 miles from Auburn; that the car was then parked in a laneway on private property and about 25 feet from an old railroad bed on which the police car was traveling; that the appellant and the two co-defendants Henry Poulin and Richard Poulin were standing at the rear of the parked vehicle with its trunk lid open; that

upon arrival of the police car the trunk lid was slammed shut by one of three men, otherwise unidentified; that on command of the officer the men entered the vehicle and drove it onto the railroad road bed; that Henry Poulin then operated the vehicle, Richard Poulin was a passenger in the front seat and the appellant a passenger in the rear seat; that the officer arrested all three men for trespass; that while waiting for assistance to arrive, the officer observed articles of clothing, subsequently identified as the stolen property, lying in plain view in cellophane wrapping on the rear seat; that the Poulin car was subsequently removed to the parking lot at the police station; that the arresting officer then obtained information through regular police channels that new winter clothing similar to that observed in the Chevrolet had been stolen in Maine; that he then obtained a search warrant, admittedly defective, and removed and impounded the stolen property at about noon or shortly after; and that thereafter the clothing remained continuously in the hands of police authorities in Massachusetts and Maine except as produced in court in connection with proceedings involving the appellant.

◼ We turn first to the motion to suppress. The defendant's theory appears to be that once a search warrant issued, it being technically invalid, a police officer purporting to act under the authority of the warrant could not under any circumstances make a valid seizure of the property described therein. This theory has no application to the situation which arises when no search is necessary. The Indiana Court summarily disposed of this argument as raising a "supertechnicality" in a case where officers seized stolen property which was in a public restaurant "in plain view." Brown v. State (1959) 239 Ind. 358, 157 N.E.2d 174, 178.

The "plain view" doctrine is universally recognized. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position

to have that view are subject to seizure and may be introduced in evidence." Harris v. United States (1968) 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067.

The statement found in the text of 47 Am.Jur. 516, Sec. 20 has abundant support in the case law of our own and other jurisdictions. "Where no search is required, the constitutional guaranty is not applicable. The guaranty applies only in those instances where the seizure is assisted by a necessary search. It does not prohibit a seizure without warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand." State v. Poulin (Me.1970) 268 A.2d 475, 480; Gerard v. State (1963) 237 Ark. 287, 372 S.W.2d 635; State v. Turner (1966) 101 Ariz. 85, 416 P.2d 409; Bryant v. United States (1958) 5 Cir., 252 F.2d 746; State v. Colson (1968) 274 N.C. 295, 163 S.E.2d 376.

Even where a search without warrant is reasonable and lawful or no search is necessary, the accompanying seizure must be accompanied by probable cause or reasonable grounds to believe that the property falls within a category which warrants the seizure. Such appears to be the clear import of Warden, Maryland Penitentiary v. Hayden (1967) 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 which abolished any distinction between fruits of the crime, instrumentalities and contraband on the one hand and "mere evidence" of criminal conduct on the other. In that case seizure of incriminating articles of clothing tending to identify the respondent followed a warrantless search made lawful by "hot pursuit." Applying the probable cause requirement, the Court concluded that on the Hayden facts, "the police * * * could reasonably believe that the items would aid in the identification of the culprit." Where stolen property was in plain view of the officers and no search was necessary, the Court in People v. McDonald (1969) 13 Mich.App. 226, 163 N.W.2d 796, 801 said, "Without a search, the police saw evidence which aroused their suspicions. Their suspicions were confirmed within the hour, and they proceeded properly in seizing that evidence, the apparently stolen goods."

So in the instant case, the officer without a search saw the articles on the seat of the car which aroused his suspicions. Later, with reasonable grounds to believe that the articles had been stolen in Maine, he seized them as evidence. There was no error in denying the motion to suppress or subsequently in admitting into evidence the exhibits of clothing.

■ The defendant further contends that the clothing exhibits were improperly admitted into evidence because the continuity of possession of the police authorities had not been shown. It suffices to say that by identifying markings and description the exhibits were adequately shown to be the same stolen in Turner and later found in the seat of the car in which the defendant rode.

■ A more serious problem arises in connection with proof of defendant's participation in the burglary. Admittedly, the State was able to offer no direct evidence of defendant's guilt nor any admissions thereof. The case against the defendant rests entirely upon the application of the presumption arising from the possession of stolen property. Such a presumption has long been recognized and applied in Maine in cases in which the State could prove beyond a reasonable doubt that defendant was in possession of the stolen property, a possession which was "recent" and "exclusive." As we review our case law, it must be noted that for the most part there has been little uncertainty with respect to the fact of defendant's possession. State v. Merrick (1841) 19 Me. 398 (sole possession of sheep by defendant who sold them as his own property); State v. Capodilupo (1921) 119 Me. 600, 112 A. 387 (sole possession by defendant of property obtained by shoplifting; State v. Russo (1928) 127 Me. 313, 143 A. 99 (sole possession of clippers by defendant who concealed them

in his cellar); State v. Lizotte (Me.1967) 230 A.2d 414 (possession by defendant of "green stamps" in glove compartment of his car, accompanied by sale thereof); State v. Langley (Me.1968) 242 A.2d 688 (sole possession of property by defendant who claimed he found it in the street); State v. O'Clair (Me.1969) 256 A.2d 839 (sole possession by defendant of stolen tractor). A more difficult problem was encountered in State v. Barrett (Me.1969) 256 A.2d 666 in which the possession was held jointly by defendant and two others. Recognizing that in order to raise the presumption the possession must be a "personal, conscious and exclusive possession of recently stolen property," which nevertheless may be "joint" possession, we concluded that a mere constructive possession by defendant of the premises in which the stolen property was stored, although evidence to be considered, would not alone suffice to raise the presumption. We held, however, that the acts of the defendant in participating actively with others in the physical transportation of the stolen item and negotiating its sale soon after the larceny constituted a joint "exercise of dominion, control and right of disposal" on which the presumption could be founded.

We have had no prior occasion to consider a situation in which the factual foundation on which the presumption must rest is as questionable as it is in the instant case. The defendant was never seen in Turner before or after the crime was committed. He was never identified as being an occupant of the car anywhere in Maine. Moreover, he was not shown to have been an occupant of the car anywhere in Massachusetts until after he and his associates had been apprehended by the police. He was neither the operator nor the owner of the automobile, nor did he exercise any control over it. Upon the evidence adduced, he could as well have been a hitch-hiker or a person invited to become a passenger at some point between Auburn and Somerset, Massachusetts. He might have been keeping a rendezvous at the place of apprehension. He exercised no personal or conscious dominion or control over the stolen property, even jointly with others, such as would fairly link him to a joint enterprise and impose upon him the burden of explanation.

We recognize that the mere presence of the defendant, alleged to be a resident of Auburn, in a remote and isolated place in Massachusetts in company with other residents of the same community, one of whom was in control of an automobile in which there was stolen property, would understandably raise the most lively suspicions in the minds of investigating officers. But such natural suspicion cannot substitute for the requisite proof of possession which alone can raise the presumption. Whether we view this case as one in which the facts necessary to raise the presumption are not shown, or as one in which the facts shown create a reasonable doubt of guilt as a matter of law, the result is the same.

In so saying we are equally mindful that larcenies, whether or not accompanied by a break, are usually committed in secrecy. In a highly mobile society unidentified offenders can in a short space of time put many miles between themselves and the scene of the crime. Police authorities charged with the difficult task of maintaining peace and tranquility stand in even greater need of the presumption from possession than was the case in 1841, when *Merrick* was decided. The requirements with respect to foundation proof must therefore not be so onerous as virtually to destroy this essential tool which is often the sole means by which criminals can be brought to justice. In our view, however, the result which we feel compelled to reach on the facts before us will not destroy the effective use of the presumption in appropriate cases. More frequently than not, police investigation will uncover facts which can be proven and which will more closely link the accused with possession as we have defined it or with the initial criminal activity than was possible in the case before us.

In what we deem to be a close case, the Maryland Court of Special Appeals raised the presumption based upon the joint possession of the appellant and two others in an automobile in which appellant was a passenger at the time of apprehension. In that case, however, three males were observed *at the scene of the crime* putting the stolen property into a car then identified by registration number, and five hours later *in the same city* three males were found in the same car with the stolen merchandise. Moreover, the alibi offered by the appellant taxed the credulity of the factfinder. Bury v. State (1968) 2 Md. App. 674, 236 A.2d 751. In an equally close case *Bury* was followed by Lawrence v. State (1969) 6 Md.App. 226, 251 A.2d 20. And in People v. Reynolds (1963) 27 Ill.2d 523, 190 N.E.2d 301 the Court found the basis of an "inference of guilt" but upon somewhat stronger facts. In that case both a car and certain merchandise had been stolen from a service station. Defendant admitted participation *in the theft of the car* in which at the time of apprehension he was *riding as a passenger seated on some of the stolen property which* "filled the whole interior of the automobile."

But on facts very similar to those in the instant case and in fact somewhat more persuasive on the issue of possession, the Court in State v. Watson (Mo.1961) 350 S.W.2d 763, 767, declined to raise the "inference of guilt." The Court stated in part:

"We are convinced on the record before us that the evidence is not sufficient to establish possession of the character required to justify an inference of defendant's guilt of the crimes charged. Thomas was the driver of the automobile which he had stolen and there is no showing that the defendant had any control or dominion over it. There is no evidence that the defendant made any claim to the stolen merchandise or undertook to control it or its disposition. While some of it was on the back seat, there is no evidence that he saw it prior to his arrest or, if we assume he did see it, that he knew it was stolen or that a burglary had been committed. The defendant told the arresting officers that he knew nothing about the stolen merchandise, whose it was or where it came from. Thomas, by his plea of guilty and his testimony at the trial, admitted that he was in possession of the loot. * *

"There is no doubt that the merchandise was recently stolen, but the defendant's presence in the automobile, without more, was not sufficient to establish his possession of the stolen property."

In State v. Schleicher (Mo.1969) 438 S.W.2d 258, 261 the Missouri Court, relying on its prior decision in State v. Watson, supra, again declined to raise the presumption in a "joint possession" case in which stolen property was found in a truck. The Court expressed its misgivings with respect to proof of requisite possession in these terms:

"We agree that his presence on the truck creates a suspicion he participated in the burglary and stealing. But '* * * mere suspicion of guilt, however strong, is not sufficient to authorize a criminal conviction.' * * *

"When it is said that defendant was seen to jump from the truck to the street and that he was arrested on the sidewalk approximately twenty feet behind the truck all has been said that this record shows regarding defendant's possession, exclusive or joint, of the property stolen, his participation in, or a conspiracy or common purpose to commit the crime. As to possession, there is no evidence as to the ownership of the truck, where it came from or who drove it to Allen Street. Moreover, there is no evidence as to when or where defendant got into the rear of the truck or that he rode it from wherever it came to Allen Street, or that he at any time had any dominion or control over the truck or the stolen merchandise in it. * * *

**456**

"The evidence in this record is not sufficient to establish possession *of the character required* to warrant an inference of defendant's guilt of burglary and stealing." (Emphasis ours.)

In the case before us we conclude that the evidence before us is not of the nature and quality required to raise the presumption which requires the defendant to go forward with explanatory evidence. Since it is by no means certain that the evidentiary defects cannot be cured upon a new trial, the case must be tried anew.

■ It remains only to consider defendant's contention that the presumption itself is unconstitutional as violative of Fifth Amendment principles. In so saying, the defendant mistakes the effect of the presumption as a procedural device. It does not compel the defendant to become a witness or give evidence which tends to incriminate him. As already noted, many crimes are committed in secrecy and by stealth and direct proof thereof may not exist. Public policy and the preservation of law and order require that the State be aided in such circumstances by a presumption rationally based. Explanatory evidence which is believed by the factfinder and deemed adequate to cause the presumption to disappear may be forthcoming from the defendant *if he so elects*, or from witnesses presented by him, or from the State's own proof. We read in Wharton's Criminal Evidence, 12th Ed., Vol. 1, Page 176, Sec. 91:

"A statute making one fact presumptive or prima facie evidence of another is constitutional if the facts warrant the application of the rule of (1) rational relationship or (2) comparative convenience. * * * Under the second, the statutory presumption is constitutional if (a) the defendant has more convenient access to proof which would overcome the presumed fact than the prosecution would have to prove the presumed fact, and (b) the placing upon the defendant of the burden of overcoming the pre-

sumption does not subject him to an unfair burden or hardship."

In the same text at page 254, Sec. 135, it is stated:

"If the defendant is in possession of recently stolen property, an inference of fact, sometimes called a rebuttable presumption of fact, arises that he has stolen the property. In some jurisdictions, the presumption is declared by statute. Such statutes are constitutional and do not violate the defendant's protection from self-incrimination, nor his right to be free from adverse comment directed at his failure to testify."

We are satisfied that this essential presumption, established by the common law in this jurisdiction, imposes no unfair burden or hardship on the defendant and meets constitutional requirements.

Other points raised by defendant are without merit and need not be further considered.

Appeal sustained.

New trial ordered.