**STATE of Maine**

v.

**Bruce LEE.**

Supreme Judicial Court of Maine.

Argued Sept. 10, 1982.

Decided Oct. 14, 1982.

Michael E. Povich, Dist. Atty., Richard A. Sullivan (orally), Asst. Dist. Atty., Machias, for plaintiff.

Francis J. Hallissey (orally), Machias, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

McKUSICK, Chief Justice.

After a jury trial, the Superior Court (Washington County) convicted defendant Bruce Lee of a burglary, Class C, 17–A M.R.S.A. § 401 (Supp.1982), committed at Frank Gillis's store in Danforth early on January 1, 1979. The sole question before this court is whether there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that Lee was guilty of the burglary as an accomplice to one Roger McEwen, who at Lee's trial testified that he had committed the burglary without Lee's participation. *See* 17–A M.R.S.A. § 57 (Supp.1982). We answer in the affirmative and accordingly affirm.

The totality of the evidence in this case, seen in the light most favorable to the

prosecution,[1] established the following facts:

On New Year's Eve, 1978, defendant Bruce Lee attended a beer party at the home of Mr. and Mrs. Roger McEwen in Danforth. Before midnight, all of the guests except defendant and one Joseph Butterfield had gone home, because the McEwens' supply of beer and cigarettes had run out. The three local stores selling those items had closed at about 10:00 p.m.

At 3:00 a.m. on New Year's Day, a local snowplow driver went past Frank Gillis's store, a short distance from the McEwen residence, and observed that its front door was intact. At about the same time, Bruce Lee and Roger McEwen appeared at the home of Timmy Page, on the other side of the street from Gillis's store. Timmy had been the last of the McEwens' guests to leave the evening before, when he went home and went to bed at midnight. In their early morning visit to Timmy's, defendant Lee and McEwen were trying to rouse him from his post-party slumbers. The two left, however, when Timmy's parents told them they were making too much noise, and at his father's direction Timmy went back to sleep. At about 4:00 a.m., Kenneth Byers, proprietor of a store directly across the street from Gillis's and next to the Page home, saw two men, each carrying a box, walking down the street away from Gillis's store and towards the McEwen residence, which was located about a hundred yards around the corner.

Between 4:30 and 5:00 that morning, Timmy Page's father went next door to Byers's store, and both he and Byers then noticed for the first time that Gillis's front door appeared to have been broken in.

Frank Gillis was called and arrived at his store shortly thereafter to confirm that a break-in had occurred and that an indeterminate quantity of beer and cigarettes had been removed.

Sometime in the early hours of that New Year's Day of 1979, Joseph Butterfield, who had gone to sleep at the McEwens' about midnight, was awakened when a package of cigarettes was thrown in his face. He opened his eyes to see defendant Lee, with Roger McEwen and McEwen's wife, standing around with a good deal of beer and "lots" of cigarettes—none of which had been there when he had gone to sleep. Timmy Page returned to the McEwen home shortly after 8:00 a.m. and found there only defendant Lee, the McEwens, and Butterfield. By his estimate, he saw at the McEwen home that morning four or five cases of beer and six to eight cartons of cigarettes.

■ Roger McEwen, testifying on behalf of defendant, told the jury that he by himself had broken into Gillis's store and had taken the beer and cigarettes and carried them alone to his nearby home.[2] At the time of his testimony, McEwen had already pleaded guilty to the burglary and was on probation.

From the foregoing evidence, the jury was justified in concluding that the two men that Byers saw carrying boxes from the direction of Gillis's store at about 4:00 a.m. were Roger McEwen and defendant Lee and that the boxes contained the loot from the burglary. McEwen admitted to the break-in himself, and uncontradicted testimony identified Lee as McEwen's companion at the McEwen home on New Year's Eve after Butterfield had gone to bed, at

1. "When a conviction is challenged on the ground of insufficiency of the evidence, the Law Court will set the conviction aside only if *no trier of fact could rationally find proof of guilt beyond a reasonable doubt, any doubts about the correctness of the jury's determination of factual questions being resolved in favor of the verdict." State v. Theriault,* Me., 425 A.2d 986, 988 (1981).

2. The jury obviously did not believe that portion of McEwen's testimony in which he at-

tempted to take sole blame for the burglary. Nor did they believe Lee, when, testifying on his own behalf, he said that he knew nothing of McEwen's *nighttime raid until he awoke in the morning*—at the McEwens' home—to see its fruits piled around him. This appellate court cannot overrule a jury's determination of what part, if any, of a witness's testimony is credible. *See State v. Mahaney,* Me., 437 A.2d 613, 621 (1981).

the Page residence shortly before the break-in, and at the McEwen home again after the beer and cigarettes had been brought back. There is no suggestion that anyone other than defendant Lee was in McEwen's company during the critical time period between about 3:00 a.m., when the pair left Timmy Page's home, and sometime later in the morning, when Lee and McEwen appeared at McEwen's home with the beer and cigarettes. If the jury members believed Byers' testimony that two men were seen heading from Gillis's store toward the McEwen residence carrying boxes, and if they believed that one of those men was McEwen, carrying off the proceeds of his break-in, then they were also justified in concluding that the second man was defendant Bruce Lee, and that Lee had been with McEwen throughout the burglary.

 It is true that no eyewitness to the break-in itself testified at trial; there was no direct testimony showing that Lee physically assisted McEwen in forcing the entrance to Gillis's store. However, the jury was properly instructed that it could find Lee guilty as an accomplice to McEwen if it concluded that Lee, "with the intent of promoting or facilitating the commission of the crime ... aid[ed] ... or attempt[ed] to aid [McEwen] in planning or committing the crime." 17–A M.R.S.A. § 57(3)(A) (Supp. 1982). And it is enough to sustain Lee's conviction on an accomplice theory that the jury could find that he was with McEwen soon before, during, and soon after the crime and that he helped McEwen to carry away its fruits. *See State v. Libby,* Me., 435 A.2d 1075, 1077 (1981); *State v. Sands,* Me., 410 A.2d 561, 562 (1980); *State v. Gervais,* Me., 394 A.2d 1183, 1185–86 (1978); *State v. Berube,* 158 Me. 433, 185 A.2d 900 (1962). The jury had sufficient evidence from which it could rationally conclude beyond a reasonable doubt that defendant Bruce Lee acted as an accomplice of Roger McEwen's in the latter's admitted burglary of the Gillis store in Danforth early on New Year's morning, 1979.

The entry is:

Judgment of conviction affirmed.

All concurring.