**STATE of Maine**

v.

**Charles HILLMAN.**

Supreme Judicial Court of Maine.

Argued Oct. 5, 1989.

Decided Nov. 9, 1989.

Mary Tousignant, Dist. Atty. and Anne H. Jordan (orally), Asst. Dist. Atty., Alfred, for the State.

James P. Boone (orally), Caron & Boone, Saco, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

Following a jury trial, the Superior Court (York County, *Cole, J.*) convicted the Defendant–Appellant, Charles Hillman, of Class C burglary in violation of 17–A M.R.S.A. § 401 (1983), and a Class C theft in violation of 17–A M.R.S.A. § 353 (1983), for breaking into the St. Louis Alumni Association's locked office and taking checks from the Biddeford High School's checkbook kept in the Association's office. Hillman appeals the burglary conviction, arguing first that the State failed to prove one of the elements of the burglary charge, and second that the Superior Court gave an improper jury instruction. We are unpersuaded by Hillman's arguments and affirm the conviction.

 First, we find no merit to Hillman's assertion that the State failed to prove that the place entered during commission of the burglary was a "structure." Proof that the place entered is a "structure" is an

element of the crime of burglary under 17-A M.R.S.A. § 401(1). *State v. Thibeault,* 402 A.2d 445, 448 (Me.1979). The burglary in this case occurred inside the Association's closed and locked interior office, to which Hillman did not have access. The office was inside the Association's larger building, to which Hillman, as an Association member, had general access. The plain language of 17-A M.R.S.A. § 2(24) (1983) defines the word "structure" to include not only free standing buildings but also "other place[s]" that are "designed to provide protection ... for property." The record reveals that the office was regularly locked and accessible by means of keys retained by only two officers of the Association and the janitorial staff, and that the office regularly held both the Association's checkbook and the Biddeford High School's checkbook. From this evidence, the Superior Court clearly had a sufficient basis to determine, as a factual matter, that the office was a place designed to provide protection for property. The fact that the office was not a free-standing structure in its own right is irrelevant. *See State v. Williams,* 387 A.2d 27 (Me.1978) (stating "[t]here is nothing to suggest ... that [an interior] 'office' was not by itself accurately characterized as a 'structure' within the comprehensive meaning intended for the term in the Criminal Code").

■ Second, we find no merit to Hillman's claim that the Superior Court committed error by instructing the jury members that they could draw the inference that Hillman is guilty of theft in circumstances constituting burglary from the fact that Hillman was found in exclusive possession of one of the checks recently taken from the Association's office. 17-A M.R.S.A. § 361(2) (1983) permits such an infer-ence to be drawn from exclusive possession of property recently taken illegally.[1]

Hillman's argument that there was insufficient evidence to permit use of the inference is unpersuasive. Evidence admitted at trial shows that on July 2, 1986, at about 12:00 noon, Hillman was the last person in the Association building and the door to the Association's office was locked and intact. At about 1:00 p.m., the janitor's assistant arrived at the building, found the door to the office broken and open, and no one in the building. The Biddeford High School checkbook was in the office the day of the break-in. Six weeks later, Mr. Faucher, the Association's treasurer and also the treasurer of Biddeford High School, realized that a page of three checks from the back of the Biddeford High School's checkbook was missing. No proper Association official issued these missing checks. One of the missing checks was signed with a shortened version of Mr. Faucher's name like that found on the Association's membership cards. The membership card that Hillman received contained a shortened version of Mr. Faucher's signature. Testimony indicated that Hillman was in unauthorized possession of another of the missing blank checks when he presented the signed check to a store clerk on July 9, 1986, seven days after the break-in.

The Superior Court's jury instruction clearly stated that the jurors were not to make use of the inference unless they also found beyond a reasonable doubt that the burglary occurred and Hillman was in exclusive possession of the property taken in that burglary. The jury could have found the elements necessary to support the crime that in turn gives rise to the inference.

We also find unpersuasive Hillman's argument that the use of a section 361(2)

---

1. Although section 361(2) states "[p]roof that the defendant was in exclusive possession of property that had recently been taken [in circumstances constituting a theft or robbery] shall give rise to a *presumption* that the defendant is guilty of the theft or robbery" (emphasis added), the word "presumption" as used in this section was intended to be synonymous with the words "permissible inference." *State v. King,* 379 A.2d 131, 133–34 (Me.1977). *See also* M.R.Evid. 303(c) (stating that a trial court instructing a jury on the existence of a presumed fact against the accused should avoid charging in terms of a presumption, but rather shall instruct the jury that it may "draw reasonable inferences from facts proven beyond a reasonable doubt").

permissible inference violated Hillman's rights under either the due process clause of the Fourteenth Amendment to the Constitution of the United States or Article I § 6 of the Constitution of the State of Maine by shifting the burden of proof to the defendant or by requiring the defen- dant to take the stand and testify. *State v. Smith*, 366 A.2d 865, 867–70 (Me.1976).

The entry is: Judgment affirmed.

All concurring.