1997 ME 93

**STATE of Maine**

v.

**Thomas KETCHUM.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 4, 1996.

Decided May 5, 1997.

Michael E. Povich, Dist. Atty., Dennis E. Smith, Asst. Dist. Atty., Ellsworth, for State.

Rosemarie Giosia, Ellsworth, for Defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Thomas Ketchum appeals from the judgment entered in the Superior Court (Hancock County, Mead, J.) on a jury verdict finding him guilty of theft by unauthorized taking (Class C)[1] in violation of 17–A M.R.S.A. § 353 (1983).[2] Because we agree

---

1. At the time of the alleged offense, 17–A M.R.S.A. § 362 (1983) provided in part:

   **3.** Theft is a Class C crime if:
   **A.** The value of the property or services is more than $1,000 but not more than $5,000.

2. 17–A M.R.S.A. § 353 (1983) provides:

1. A person is guilty of theft if be obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.
2. As used in this section, "exercises unauthorized control" includes but is not limited to conduct heretofore defined or known as com-

with Ketchum's contention that the evidence is insufficient to support the conviction, we vacate the judgment.

[¶ 2] The testimony at trial revealed the following facts: on July 28, 1994, William Haefele, operator of the Country Store in Trenton, reported to the Hancock County Sheriff's Office that fifteen to eighteen Emmett Kelly figurines had been stolen from his gift shop within the previous two days. On July 29, just after lunch, Haefele reported that eight additional figurines had been stolen from his shop on that day.

[¶ 3] As the police were responding to Haefele's second complaint, Lincoln Fenno, a registered dealer of Emmett Kelly figurines located in Bar Harbor, called the sheriff's office at approximately 4:00 p.m. Fenno provided a description of a vehicle whose passengers had been acting suspiciously in his store a few moments earlier. At trial, Fenno identified Ketchum as one of the individuals. Fenno's description was placed over the police dispatch and received by Sergeant Scott Kane. After hearing the description, Scott Kane searched for the vehicle and spotted it leaving Bar Harbor at approximately 5:00 p.m. Scott Kane followed the vehicle into a supermarket parking lot and noticed three individuals in the vehicle later identified as Michael Curtis, Wayne Paschal and Ketchum. Scott Kane testified that he questioned Ketchum, who was sitting in the front passenger seat. Ketchum stated that he had been in the Bar Harbor area with the other two but that he had not done any shopping or been in any stores. Another officer who was on the scene then noticed the stolen objects in two brown bags in the back of the vehicle and alerted Scott Kane. When questioned about the stolen figurines in the vehicle, Ketchum denied knowing anything about the bags. Ketchum stated that his companions had been in stores shopping but that he did not know what they had purchased.

[¶ 4] As Scott Kane was questioning Ketchum, another officer, Sergeant Patrick Kane, had approached the driver of the vehicle, Michael Curtis, and had begun to question him. Patrick Kane obtained consent from Curtis to search the vehicle and located the eight Emmett Kelly figurines missing from Haefele's store. During the investigation, Scott Kane questioned Tara Hart, a clerk at the Country Store, who recalled a suspicious couple being in the store on Sunday, July 25. She identified the couple as Curtis and his girlfriend.

[¶ 5] Curtis also consented to a search of his home in Bangor. Ketchum rented a second floor bedroom from Curtis. The search of Curtis's residence produced eleven more Emmett Kelly figurines stolen from the Country Store. The figurines were located in the living room on the first floor of Curtis's home. Haefele testified that the value of the eight figurines recovered was $736.60, and that the eleven figurines were worth over $1,000.00.

[¶ 6] At the trial, Ketchum moved for a judgment of acquittal after the State rested and after both parties finally rested. The court denied both motions. Ketchum also objected to jury instructions regarding accomplice liability and recent exclusive possession. This appeal followed the jury verdict finding Ketchum guilty of a Class C theft.

I

[¶ 7] Ketchum contends that the court erred in failing to grant his motion for a judgment of acquittal. He argues that there was no evidence that he was guilty of theft by unauthorized taking as the principal or an accomplice or that he was in exclusive possession of recently stolen property.[3] While he concedes that the figurines were stolen, Ketchum argues that the only evidence linking him to those figurines is his presence in Curtis's vehicle on July 29, and that he and Curtis shared the same residence. When examining the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine whether a

mon law larceny by trespassory taking, larceny by conversion, larceny by bailee and embezzlement.

3. Because we conclude that the court should have granted Ketchum's motion for a judgment of acquittal we have no need to separately address Ketchum's contention concerning the jury instructions.

trier of fact rationally could find beyond a reasonable doubt every element of the offense charged. *State v. Marden*, 673 A.2d 1304, 1311 (Me.1996).

[¶ 8] In defending the jury's verdict finding Ketchum guilty of theft, the State contends that the evidence was sufficient to hold Ketchum responsible for the theft as an accomplice, pursuant to 17–A M.R.S.A. § 57 (1983).

[¶ 9] 17–A M.R.S.A. § 57 provides in part:

1. A person may be guilty of a crime if it is committed by the conduct of another person for which he is legally accountable as provided in this section.

2. A person is legally accountable for the conduct of another person when:

. . . .

   C. He is an accomplice of such other person in the commission of the crime, as provided in subsection 3.

3. A person is an accomplice of another person in the commission of a crime if:

   A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees or attempts to aid such other person in planning or committing the crime. . . .

17–A M.R.S.A. § 57 (1983).

■ [¶ 10] Ketchum's presence in a vehicle that contained some of the stolen items is not sufficient evidence on which to hold Ketchum responsible as an accomplice to theft. *See State v. Carter*, 391 A.2d 344, 347 (Me.1978) (mere presence as passenger in vehicle driven by robbery suspect and containing instrumentalities of crime insufficient to sustain verdict of defendant's guilt as accomplice to robbery).

[¶ 11] Viewing the evidence in this case in the light most favorable to the prosecution, a trier of fact could not avoid having a reasonable doubt that Ketchum was an accomplice to theft. The testimony revealed that Ketchum drove to Bar Harbor with Curtis and Paschal and was with them when the eight stolen figurines were recovered. The stolen figurines were found in the back seat of Curtis's vehicle in which Ketchum was riding in the front passenger seat. There was no evidence that placed Ketchum at the scene of the crime, the Country Store, or that he performed any role, such as a lookout, *see State v. Robert M.*, 588 A.2d 1202, 1202 (Me. 1991), nor was there any evidence that he helped carry away the stolen items. *See State v. Lee*, 451 A.2d 313, 315 (Me.1982).

II

■ [¶ 12] The State also contends that the jury verdict can be sustained on the basis that Ketchum was in exclusive possession of the recently stolen property which gives rise to the presumption set out in 17–A M.R.S.A. § 361(2) (1983), that Ketchum is guilty of theft. That section provides in part:

2. Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter . . . shall give rise to a presumption that the defendant is guilty of the theft . . . of the property. . . .

To gain the benefit of the statutory presumption, where, as in this case, there is no evidence of actual physical possession of the stolen goods by the defendant, the State must produce evidence establishing that: (1) the defendant constructively possessed the stolen goods; (2) the existence of other possessive conduct on the part of the defendant in relation to the stolen goods; and (3) the stolen goods were "recently taken." *State v. DePhilippo*, 628 A.2d 1057, 1060 (Me.1993).[4]

■ [¶ 13] Constructive possession means that although one does not have actual physical control of the goods he "has dominion and control over them." *Id.* (*quoting State v. Durgan*, 467 A.2d 165, 167 (Me. 1983)). The evidence pertaining to Ketchum's constructive possession of the stolen property is insufficient. Ketchum's mere presence in Curtis's vehicle, where some of the stolen items were found, is insufficient evidence to establish Ketchum's constructive

---

4. The State has not advanced a different construction of 17–A M.R.S.A. § 361(2) than that set forth in *State v. DePhilippo*, 628 A.2d at 1060.

possession of those items. In *State v. Dall,* 305 A.2d 270 (Me.1973), stolen property was found in a bag partially under the seat in the vehicle that defendant was occupying. Even though the defendant was seen bending forward in that seat just prior to the vehicle being stopped, we concluded that there was insufficient evidence to prove possession of the stolen items beyond a reasonable doubt. *Id.* at 272. We stated "[t]here are simply too many rational hypotheses explanatory of such a sudden movement which are consistent with a lack of control or possession of the stolen property." *Id.; see also State v. Mosher,* 270 A.2d 451 (Me.1970). In this case, Ketchum was present in the vehicle but was not occupying the seat where the figurines were found and there was no evidence of any furtive, suspicious movement on his part at or just prior to the time of the stop.

[¶ 14] The discovery of eleven figurines in the living room on the first floor of Curtis's home where Ketchum was a tenant is likewise insufficient on which to base a finding of constructive possession. The room rented by Ketchum was on the second floor. The only evidence offered on Ketchum's use of the premises was that his possessions were located solely in the bedroom that he rented on the second floor. This case differs from *State v. DePhilippo,* 628 A.2d 1057, 1060 (Me.1993), and *State v. Robinson,* 561 A.2d 492, 495 (Me.1989), where stolen goods found at a location owned solely by the defendant supported a finding of guilt premised on constructive possession.

The judgment is:

Judgment vacated. Remanded for entry of judgment of acquittal.

GLASSMAN, RUDMAN and DANA, JJ., concur.

ROBERTS and LIPEZ, JJ., dissent.

LIPEZ, Justice, with whom ROBERTS, Justice, joins, dissenting.

[¶ 15] I respectfully dissent because the evidence is sufficient to support Ketchum's conviction. Moreover, the Court's opinion reveals the need for clarifying the requirements the State must meet to gain the benefit of the statutory presumption set forth in 17-A M.R.S.A. § 361(2) (1983).[5]

I

[¶ 16] On July 29, 1994, eight Emmett Kelly figurines were stolen from the Country Store operated by William Haefele. Late that afternoon, the stolen figurines were recovered from Michael Curtis's car in which Ketchum and Wayne Paschal were passengers. The jury could find that all three occupants of the car were in possession of the recently stolen figurines, provided there were additional circumstances indicative of guilt. Through the testimony of Lincoln Fenno, a registered dealer of the figurines, the jury learned that Ketchum and Paschal had been in Fenno's store that afternoon. They were acting so suspiciously that Fenno followed them, noted the description and registration number of their car, and immediately called the sheriff's office. That call led to the interception of the vehicle by Sergeant Scott Kane. When questioned by Officer Kane, Ketchum admitted that he had been riding around Bar Harbor with Curtis and Paschal. Ketchum denied, however, that he had been in any stores while he was in Bar Harbor.

[¶ 17] Ketchum's false claim that he had not been in any stores indicated a consciousness of guilt. That guilty state of mind, coupled with his suspicious behavior in Fenno's store, supplied the added circumstances sufficient to support the jury's guilty verdict. *See State v. Austin,* 518 A.2d 1042, 1045–46 (Me.1986) (proof of mere presence in vehicle containing stolen goods, coupled with evi-

---

5.  The statute states in relevant part:
    2. Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter ... shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be, ....

17-A M.R.S.A. § 361. The "presumption" referred to in the statute must be read as a "permissible inference." *State v. Hillman,* 565 A.2d 1012, 1013 n. 1 (Me.1989) (explaining relation to M.R.Evid. 303(c)); *State v. King,* 379 A.2d 131, 133–34 (Me.1977) (juries must be instructed in terms of "permissible inference" rather than "presumption").

dence of suspicious activities prior to commission of the offense, is sufficient to sustain conviction for burglary and theft). The Court errs if it is requiring that the evidence of the defendant's constructive possession of the stolen goods found in the vehicle be contemporaneous with his presence in the vehicle. Such evidence can involve proof of conduct earlier or later in time. I would therefore affirm the conviction.

## II

[¶ 18] Although the Court emphasizes the insufficient proof pertaining to Ketchum's constructive possession of the stolen property, it quotes *State v. DePhilippo*, 628 A.2d 1057, 1060 (Me.1993), for the proposition that to gain the benefit of the statutory presumption relating to the exclusive possession of recently stolen property, in the absence of evidence of actual physical possession of the stolen goods by the defendant, the State must produce evidence establishing: (1) that the defendant constructively possessed the stolen goods; (2) the existence of other possessive conduct on the part of the defendant in relation to the stolen goods; and (3) that the stolen goods were "recently taken." In this case there is no evidence of "other possessive conduct on the part of the defendant in relation to the stolen goods." *Id.* *(quoting State v. Durgan*, 467 A.2d 165, 168 (Me. 1983)). If this element of proof was, in fact, necessary to gain the benefit of the statutory presumption, I would agree with the court that there was insufficient evidence of Ketchum's guilt. In my view, however, the "oth-

er possessive conduct" requirement is an anomaly of Maine law that imposes a needless duplication of the constructive possession requirement.

[¶ 19] The law generally recognizes two kinds of possession, actual and constructive.[6] *DePhilippo*, 628 A.2d at 1060. A defendant who has actual physical custody of the stolen goods is in actual possession of them. *Id.* "Constructive possession means that although one does not have actual physical custody of the goods, [the defendant] has dominion, authority or control over them." *Id.* (quotation omitted). Maine's common law rule permitting an inference that the person in recent possession of stolen goods committed the theft or burglary dates to the 19th century. *See State v. Saba*, 139 Me. 153, 27 A.2d 813 (1942) (citing *State v. Merrick*, 19 Me. 398, 400–01 (1841); *State v. Russo*, 127 Me. 313, 314–15, 143 A. 99 (1928)); see also 17–A M.R.S.A. § 361(2), Comment—1975 ("Subsection 2 contains a rule that is already law in Maine."); P.L. 1975, ch. 499, § 361. However, the first reference to evidence of other "possessive conduct" as a prerequisite for the inference when there is only constructive possession occurred in *State v. Barrett*, 256 A.2d 666, 669 (1969). In *Barrett* we declared that "[t]he jury under appropriate instructions might have found that the accused was in *constructive possession* of the shed and its contents [the stolen goods], *but such possession alone is insufficient to raise the reference presumption*" (emphases added). We went on, however, to articulate the necessary

---

6. Both actual and constructive possession may be sole or joint, *State v. Bachelder*, 403 A.2d 754, 761 (Me.1979). "Exclusive possession" would seem to be inconsistent with joint possession, but our case law suggests that in this context the word "exclusive" is intended to signify dominion and control rather than exclusivity per se. As the Court explained in *Bachelder*,

Notwithstanding the fact that the term "exclusive" possession might, in ordinary usage, imply that a defendant must be in "sole" possession of recently stolen property in order for the permissible inference to come into play, this Court has held that joint possession of stolen property by two or more persons may be deemed the exclusive possession of any one of them where there is evidence that the defendant "acted in concert" with the other person

or persons in possession of the property as a "participant in the crime." The inference of guilt may be drawn if the jury finds that the defendant made a "conscious assertion of possession," or that the recently stolen goods were found in a location where they were placed " 'by the act of the party [defendant] or [with] his undoubted concurrence.' "

403 A.2d at 761 (citations omitted); *see also State v. Mosher*, 270 A.2d 451, 454 (Me.1970) (noting that *State v. Barrett*, 256 A.2d at 668, stands for the proposition that joint possession may be exclusive where defendant's participation with others in the physical transportation of a stolen item and negotiation of its sale soon after the larceny constituted a joint "exercise of dominion, control and right of disposal" on which the statutory inference could be founded).

additional proof in terms of the standard definition of constructive possession:

> If the presumption is supported *it must rest on the possessive conduct* of Barrett in helping Wiley transport the set for purposes of sale. *This conduct* in the light of all the surrounding circumstances *could be found to be an exercise of dominion, control, and right of disposal* jointly with Wiley, or with Smith, or with both, soon after the larceny and *amounts to the possession upon which a reasonable presumption of guilt can be founded.* . . . The reasonability of this presumption leading to a justifiable conviction for larceny is significantly bolstered by the testimony, pointing directly to the felonious act, that contrary to the alibi evidence, Barrett was with Wiley 'uptown' at the time of the larceny.

256 A.2d at 669 (emphases added). We never explained in *Barrett* why this additional evidence of the defendant's dominion and control over the stolen item was not simply further evidence of the defendant's constructive possession of the item. In fact, it was further evidence of constructive possession. It should not be a discrete element of proof.

[¶ 20] Nonetheless, in subsequent cases we referred to "possessive conduct" as an additional element of proof the State must provide to gain the benefit of the statutory presumption, and continued to do so even when application of the requirement revealed its redundancy. In *State v. King*, for example, we asserted that "[w]here constructive possession is shown . . . exclusive possession may be found if the evidence shows some *other 'possessive conduct'* on the part of the defendant," and held that the jury's finding of constructive possession was justified in part because of evidence that the defendant had invited a friend to look at the goods in the basement of an apartment to which he had unlimited access. 379 A.2d 131, 134 (Me. 1977) (emphasis added). We then went on to explain that "[the defendant's] *possessive conduct or his exercise of dominion and control,* is amply demonstrated by *his acts of inviting people to the cellar to see the tools* and by the presence of his fingerprint on one of the tools." *Id.* at 134–35 (emphases added). That is, we not only defined "other

possessive conduct" in terms of what constitutes constructive possession, but we found the supposedly separate requirement to have been met by virtue of the same evidence used to prove constructive possession.

[¶ 21] We should stop perpetuating this redundancy. Constructive possession requires proof that the defendant has the ability to exercise dominion or control over the items at issue. Proof of possessive acts relating to those items—acts that go beyond mere presence—is one way to establish such dominion or control, and hence prove constructive possession. To require proof of other possessive acts independent of and in addition to the constructive possession requirement makes no sense.