**STATE of Maine**
**v.**
**Walter C. HAYCOCK, III.**

Supreme Judicial Court of Maine.
Nov. 3, 1972.

Joseph E. Brennan, County Atty., Donald G. Lowry, Asst. County Atty., Portland, for plaintiff.

Maurice Davis, Paul K. Stewart, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This is an appeal from the defendant's conviction of an alleged assault on one Phillip Watts. The appellant raises only two issues, claiming:

1) The facts underlying the jury's verdict of guilty did not exclude every reasonable hypothesis except that of guilt and, therefore, fell short of meeting the standards by which guilt is determined when based upon circumstantial evidence.

2) The participation of the trial Judge in the examination of witnesses for the State was prejudicial.

The resolution of both issues involves an analysis of the facts in the record tested against the well established rules of law having to do with the weight to be given circumstantial evidence and the limitations upon the intervention of a trial judge in the examination of witnesses. We conclude that the verdict of the jury is supported by the record and that there was no error by the presiding Justice in any questions that he may have asked the witnesses.

■ Since the victim of the assault was unable to testify directly that the defendant assaulted him by either throwing a beer bottle at him or striking him over the head with it, the jury verdict, of necessity, had to be based upon all the underlying and surrounding circumstances.

The burden cast upon the State to establish guilt based upon circumstantial evidence has become so standardized that it need not be repeated here. State v. Liberty, (Me.) 280 A.2d 805, 807 (1971); State v. Silva, 153 Me. 89, 134 A.2d 628 (1957); State v. Allen, 151 Me. 486, 121 A.2d 342 (1956).

On the evening of the day in question Phillip D. Watts was involved in a minor accident while his car was parked near a sandwich shop in Portland. Apparently an oil truck driven by one Leon Bean had struck the Watts car, causing some minor damage to one of the fenders. While Mr. Watts and Mr. Bean were disputing the cause of the accident, and viewing the dented fender, the defendant, at Mr. Bean's re-

quest, joined them. Watts and Bean were inspecting the dented fender when Watts was struck with considerable force by a beer bottle, the blow being on the frontal part of his head, requiring stitches "across the eyebrow." Because of the position that the people were in at the time, Watts testified, "I know Mr. Bean didn't hit me because he was to the *right* hand side of me." (emphasis supplied)

The treating physician described the injuries as being "many small lacerations in the soft tissues over and around the area of his *left* eye and forehead and left cheek," and "one small scalp laceration." (emphasis supplied)

Just prior to the assault the defendant had been in an adjacent store with a companion who had purchased beer. Mr. Watts described the incident in this language:

"A And Mr. Bean said to come on over here, 'you are a witness that I didn't hit this guy's car', and I looked at Mr. Bean and I said 'you certainly did too', and I pointed down at the dent in the car, and when I did, a bottle struck me over the head. At the time I did not know it was a bottle, but I know I got struck over the head, and then I could smell all the beer when I got hit.

Q The beer had been splashed on you when you were hit?

A Right."

.    .    .    .    .    .

"Q And did you, after you were hit, look up and see who had hit you?

.    .    .    .    .    .

A I did not actually see this fellow hit me on the head, but when I looked up, this fellow was backing away, and mumbled something, and I was —.

Q What did he mumble?

A As far as I can tell, something like 'do you want to fight', something like that. I can't remember the exact words, but I do remember the fight portion.

Q Now, at the time you were hit, how close was this man to you?

A Probably all three of us were within an arm's length of each other, or just about an arm's length."

The defendant testified. He categorically denied any involvement in the assault or using the language attributed to him, although he did admit being at the scene at Mr. Bean's request.

The jury, in analyzing this testimony, having had the circumstantial evidence rule carefully and correctly explained, and having heard and seen the witnesses, could readily have concluded that there was no other reasonable hypothesis than that the defendant was solely responsible for the assault. It was the jury's prerogative to reject as pure conjecture the theory that an unknown party had thrown the beer bottle at Mr. Watts. While it was argued that the bottle may have fallen from the top of the car, thus striking Mr. Watts's head, the extensive damage caused by the blow is entirely inconsistent with this view of the testimony and the jury could properly disregard this as a mere surmise.

In support of the second contention the appellant argues that "[t]he Judge's participation constituted an implied comment on the weight of the testimony and usurped the role of an advocate in seeking to impeach the witness."

At the completion of direct and cross-examination of witness Bean, the record discloses that the presiding Justice, sua sponte, conducted a further examination of Mr. Bean which consumed approximately five pages of the printed record. This was

done without objection. The record discloses a one page examination of Mr. Watts by the Justice, likewise without objection.

■ During a jury trial the presiding justice is prohibited from indicating any opinion upon factual issues arising in a case.[1] While "it never was intended that a Judge should sit listlessly by, fulfilling duty as though he were administering the rules in a contest for superiority by chance and skill, utterly powerless to aid in the ascertainment of truth as the underlying essential to a proper verdict,"[2] he should not assume the posture of an advocate and should never retreat from a position of judicial impartiality.

■ Under circumstances where the defense counsel regards the intervention of the presiding Justice as exceeding permissible limits, he should immediately utilize M.R.Crim.P., Rule 51, and make known "to the Court the action which he desires the Court to take or his objection to the action of the Court and his grounds therefor." This was not done in the case before us. A careful reading of the examination of the two witnesses by the presiding Justice does not indicate that it was "so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or . . . that the accused has not had the impartial trial to which under the law he is entitled." State v. Rowe, 238 A.2d 217, 225 (Me.1968).

The entry is:

Appeal denied.

POMEROY, J., did not sit.

All Justices concurring.

1. 14 M.R.S.A. § 1105.

2. Benner v. Benner, 120 Me. 468, 469, 115 A. 202 (1921).