STATE of Maine

v.

Calvin BACHELDER.

Supreme Judicial Court of Maine.

June 26, 1979.

 

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Hall & DeSanctis by Julio DeSanctis (orally), Bangor, for defendant.

Before McKUSICK, C. J., POMEROY, ARCHIBALD, DELAHANTY, GODFREY, and NICHOLS, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.[1]

Calvin Bachelder (defendant) was indicted for the offense of burglary (Class C) in violation of 17–A M.R.S.A. § 401, the charge being

> "[t]hat on or about the 30th day of January, 1978, in the County of Penobscot, State of Maine, CALVIN BACHELDER did enter the structure of Seguino Enterprises, Inc., a corporation, knowing that he was not licensed or privileged to do so, with the intent to commit theft therein."

The evidence did indicate that Napoli's Pizza, located at 622 Hammond Street, in Bangor and operated by the reference corporation had been broken into in the early hours of January 30th with sundry beer, wine and grocery items being taken. Tried by jury in the Superior Court (Penobscot County), the defendant was found guilty as charged. He appeals to this Court from the judgment of conviction which followed. We deny the appeal.

## Facts

The evidence before the jury disclosed that, at 3:30 a. m. on the morning of January 30, 1978, Officer David Melochick of the Bangor Police Department, while checking the security of Napoli's Pizza, found that the glass door which provided the main entrance to the place had been broken as there was a hole therein approximately 2½ feet in diameter. After making an investigation and notifying the store manager, Melochick left the premises at about 4:30 a. m. Prior to the discovery of the break, the officer had noticed in the general area a

1. Sitting by assignment.

four door green Plymouth automobile with a spotlight mounted on the front windshield post on the driver's side, an antenna on the trunk and a symbol of some sort on the upper roof post at the rear of the roof. Shortly after resuming his patrol, the officer spotted the same automobile which had previously caught his attention and proceeded to stop it. Bachelder was at the wheel and one Cauley Connell to whom the car was registered was seated on the passenger side. Bachelder was unable to produce a driver's license, while Connell supplied the registration certificate. The officer asked the defendant if he would mind opening the trunk of the vehicle. Bachelder readily went to the rear of the car, but, after trying two or three of the keys, was unable to open the trunk. On the officer's suggestion, Connell did get it open without difficulty, and, there, in plain view of Officer Melochick, was a large quantity of beer, wine and other food products later identified as merchandise stolen from Napoli's Pizza.

The critical issue for the jury was the resolution of the conflict between the testimony of Connell and the defendant Bachelder. Connell, who had entered into a plea bargain with the State in return for his testimony against the defendant, gave the following account of the burglary. At about 8:00 o'clock in the evening of January 29th he went to the apartment of Bachelder's sister (Cindy) on Hammond Street in Bangor. After drinking and socializing till about 1:00 a. m. in the night he left with Bachelder for Napoli's Pizza where he (Connell) kicked in the glass of the main entrance door and the defendant entered the premises bringing out the beer and other items which he (Connell) loaded in the trunk of the car.

The loot was then taken upstairs to Cindy's apartment. He testified, however, that the defendant did not accompany him on his second and third trips to the then unsecured business establishment. Having returned to the apartment, Connell stated that he later went out, but this time again in the company of Bachelder who took over the driving of the car, in search of a store

where they could purchase cigarettes, but their quest was aborted by the confrontation with Officer Melochick. The defendant, on the other hand, taking the stand in his own defense, told a different story which was corroborated by his sister Cindy and two of his friends, Sonya Gordon and Daniel Ward, who were also socializing at the Hammond Street apartment. They testified that Connell left the apartment alone at approximately 2:00 a. m. and returned at about 4:00 a. m., when the defendant agreed to drive him to get cigarettes. Bachelder testified that he did not leave his sister's place until 4:00 o'clock in the morning and had nothing to do with the break at Napoli's Pizza.

## I

Faced with this conflict in testimony, the jury was charged with the task of determining who was telling the truth. On appeal the defendant attacks the conduct of the trial Justice on two separate occasions during the trial as being in derogation of his constitutional right to an impartial trial (Constitution of the State of Maine, Article I, Section 6) and in violation of 14 M.R.S.A. § 1105 which prohibits the presiding justice from expressing an opinion upon issues of fact arising in the case. The defendant contends that the Justice's alleged improper conduct, when viewed either singly or together, constituted reversible error, because, so he claims, it tended to prejudice the jury on the issue of credibility. We disagree.

The first incident occurred when defense counsel was examining defense witness, Cindy Bachelder, the defendant's sister. She testified that, on the morning of her brother's arrest, she and her friend Sonya discovered at least eight or ten cases of beer in and around the large metal trash disposal container available at ground level to the tenants of the multiple housing unit in which she lived. She stated that the beer, with other items such as meats and olives, were all toted by herself and her friend Sonya to her apartment on the top floor of the eight-tenement building. She main-

tained she had no idea "where it come from." The beer was later identified as merchandise stolen from Napoli's Pizza. To clarify her testimony regarding the beer, the presiding Justice carried the following colloquy with Miss Bachelder:

Q. "When you're talking about cases of beer, you're talking about a six-pack of beer or talking about a case that has 4 6-packs in it; do you know?"

A. "I'm talking about 4 6-packs."

Q. "A case with 4 6-packs, about 24 bottles of beer in it?"

A. "Yeah."

Q. "And they were cardboard cartons?"

A. "Yeah, there was a couple of boxes."

After defense counsel brought out that Cindy could carry by herself a case of beer up to the apartment at the top floor of the building and that Sonya and herself had carried all the beer to the apartment and that it took about an hour to do so, the Justice again interrupted and asked two questions, to which the defendant takes offense:

Q. "When were you planning to move out that day?"

A. "Oh, in between probably eight and two, whenever we got out, early morning."

Q. "But you brought eight or nine or ten cases up to the top floor of the building to the apartment you were going to move out of?"

A. "Uh-hum."

We note that defense counsel neither raised objection at the time, nor at the completion of the cross-examination of Miss Bachelder. His motion for mistrial was made to the Court following a lengthy examination and cross-examination of Daniel Ward, another defense witness. No cautionary or explicative instruction in respect thereto was ever requested.

The second incident of misconduct on the part of the trial Justice which the defendant asserts deprived him of a fair trial arose in the following manner. The prosecuting attorney, in his cross-examination of the defendant, had gotten the information that Bachelder had in the past worked at Napoli's Pizza and was very familiar with the layout in the place. With the picture of the broken glass door in hand, the defendant conceded that "a person [the supposed burglar] would have to crawl through [the hole in the glass door], go down to the cooler and go back out." After referring to Connell's condition of intoxication, the State's attorney then asked this question:

"Wouldn't you agree it would be very difficult for a person to crawl through this hole without hurting himself?"

The following colloquy ensued.

"[Defense counsel]: Objection.

"The Court: What grounds?

"[Defense counsel]: No foundation for his opinion *whether a drunk could do that or not.* (Emphasis ours)

"The Court: If he has an opinion, *he was there—well, he's not there.* (Emphasis ours). He's got the picture. The picture shows the opening in the door. If the witness can give an opinion, he can.

"The witness: I don't know.

"The Court: If he can't, he can't.

[The witness] "A. I don't know how he could have.

[The prosecuting attorney]

"Q. Okay.

You just say you admit it would be very difficult for him to carry out 10, 20 cases of beer, whatever the amount was.

"A. Probably.

"Q. — is that correct?

And you deny his statement that he stood outside and you handed the beer to him through that hole?

"A. Yes.

"Q. When you saw him when he returned at four o'clock in the morning there were no scratches or anything else of that nature on him, were there?

"A. No.

"Q. His clothes weren't disarrayed or anything of that nature?

"A. No."

Again, no objections were raised by defense counsel at the time of this colloquy, the cross-examination of the defendant was carried to its conclusion, the defense rested and the Court took its afternoon recess. It is only at the resumption of the trial for the State's rebuttal that a motion for mistrial was made

"based on the statement by the Court, however inadvertent, that the Defendant was in the premises that were burglarized that was made during the testimony of the Defendant,"

which motion was denied. No request for an immediate or later explanatory instruction was made.

The Declaration of Rights, otherwise known as the Bill of Rights, of the Constitution of Maine (Article I, § 6) guarantees, among other things, that

"[i]n all criminal prosecutions, the accused shall have a right . . .. [t]o have a speedy, public and *impartial* trial . . .." [2] (Emphasis supplied)

Impartiality of the trial process is the very foundation of the American judicial system. This fundamental and basic concept of justice, expressly incorporated in the Declaration or Bill of Rights of the constitutions of several of the States of the Union as a curb on governmental power, encompasses both, 1) impartiality of the jury (*Christian v. State,* Me., 268 A.2d 620 (1970); *Bennett v. State,* 161 Me. 489, 214 A.2d 667 (1965)), and 2) impartiality on the part of the trial judge, either in word or conduct.

In *Payne v. Lee,* 222 Minn. 269, 24 N.W.2d 259, 262–263 (1946), the Minnesota Court said:

"The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would be injurious to the public interest."

These provisions of our constitutional Bill of Rights are self-executing and do not depend upon enabling legislation to become effective. They are shields inscribed in the Constitution for the preservation of liberty under law and the protection of each individual from oppression and wrong from whatever source, the executive, legislative or judicial power. *Medina v. People,* 154 Colo. 4, 387 P.2d 733 (1964), cert. denied, 379 U.S. 848, 85 S.Ct. 88, 13 L.Ed.2d 52; *Ferrell v. North Carolina State Highway Com'n,* 252 N.C. 830, 115 S.E.2d 34 (1960); *Quinn v. Buchanan,* 298 S.W.2d 413 (Mo.1957); *Ex parte Berman,* 86 Ohio App. 411, 87 N.E.2d 716 (1949); *Hoy v. State,* 225 Ind. 428, 75 N.E.2d 915 (1947); *Feldman v. City of Chicago,* 363 Ill. 247, 2 N.E.2d 102 (1936). They are binding on the courts. *Cooper v. Nutley Sun Printing Co., Inc.,* 36 N.J. 189, 175 A.2d 639 (1961). *Cf. Moores v. Inhabitants of Town of Springfield,* 144 Me. 54, 64 A.2d 569, 16 A.L.R.2d 502 (1949).

Although the Bill-of-Rights provisions are self-executing, the Legislature is not thereby precluded from enacting legis-

---

**2.** Article I, § 6 provides in full:

"Section 6. In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election;

"To demand the nature and cause of the accusation, and have a copy thereof;

"To be confronted by the witnesses against him;

"To have compulsory process for obtaining witnesses in his favor;

"To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity. He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by judgment, of his peers or the law of the land."

lation to facilitate the exercise of these constitutional privileges and the enforcement of these protective rights. Any implementing legislation, however, may not in any way impair those rights, as the Legislature also is bound by the organic law of the State. *Cooper v. Nutley Sun Printing Co., Inc.,* supra. See also, *State v. Bellmore,* 144 Me. 231, 233, 67 A.2d 531 (1949); *State v. Webber,* 125 Me. 319, 133 A. 738 (1926).

Our Court has extended recognition to analogous implemental legislation. See *Bennett v. State,* 161 Me. 489, 214 A.2d 667 (1965); *Orono-Veazie Water Dist. v. Penobscot County Water Co.,* Me., 348 A.2d 249 (1975).

Over a century ago, our Legislature did enact specific legislation giving definitive protection to an accused's constitutional right to have an impartial trial in the criminal prosecution against him. Indeed, 14 M.R.S.A., § 1105 [3] is the same as its ancestral prototype (P.L. 1874, c. 212), except for wording changes made necessary by the adoption of the Rules of Criminal Procedure in 1965.

▮ Interpreting the statute as proper shoring of the constitutional right to an impartial trial, our Court has ruled that a violation of the statute which impaired the impartiality of the jury by reason of a trial judge's expression of an opinion to the jury on a factual issue in the case, either directly or indirectly, by express direction or by conduct, was sufficient cause for a new trial at the request of the party aggrieved.

▮ No authority need be cited for the proposition that a trial judge is prohibited, not only under 14 M.R.S.A. § 1105, but also pursuant to the constitutional mandate that an accused be given an impartial trial, from advising the jury respecting his own opinion, should he have any, on disputed issues of fact which the jury must decide.

▮ Our Court has said that what a trial judge is forbidden to do directly, he may not achieve by indirection, such as by giving the jury a one-sided summation of the evidence. *State v. Brown,* 142 Me. 16, 45 A.2d 442 (1946). He must use great care in not suggesting that he endorses the cause of one side over that of the other side by emphasizing specific evidence in the case. *State v. Hudson,* Me., 325 A.2d 56 (1974). He must not disparage in the minds of the jury the accused's theory of the case. *State v. Caron,* Me., 382 A.2d 1390 (1978). He must not create the impression with the jury that he entertains doubts as to the defendant's veracity. *State v. Annis,* Me., 341 A.2d 11 (1975).

▮ Furthermore, the trial judge should not assume, at any time during the trial, the posture of an advocate by conducting to a substantial degree, quantitatively or qualitatively, the examination or cross-examination of the accused or other witnesses in the case. Such conduct tends to wear down the judge's cloak of impartiality and may lend itself to generating with the jury a serious influential impact upon their deliberations which might deprive the accused of the judgment of his peers. *State v. Lint,* Me., 361 A.2d 926 (1976); *State v. Annis,* supra; *State v. Haycock,* Me., 296 A.2d 489 (1972).

But, as we stated in *State v. Annis,* supra, at page 14:

"We have frequently recognized that a trial judge must be more than an impartial referee and that, on occasion, he is required to participate in the interrogation of witnesses to prevent a miscarriage of justice, such as to clarify confused evidentiary situations or to bring forward overlooked essential facts."

Even though the limited questioning by the Court in the instant case did not come within these two stated factual circum-

---

3.  14 M.R.S.A. § 1105 provides as follows:

"During a jury trial the presiding justice shall rule and charge the jury, orally or in writing, upon all matters arising in the case *but shall not, during the trial,* including the charge, *express an opinion upon issues of fact arising in* *the case,* and such an· expression of opinion is sufficient cause for a .new trial if either party aggrieved thereby and interested desires it, and the same shall be ordered accordingly by the law court on appeal in a civil or criminal case." (Emphasis added)

stances, nevertheless, we hold that the defendant is not entitled to a new trial by reason of the presiding Justice's conduct at trial.

■ Initially, the defendant did not raise his objections timely pursuant to Rule 51, M.R.Crim.P. He must make known immediately to the Court his disagreement with the Court's action, if he believes that the intervention of the presiding justice exceeds permissible limits, and he should state his grounds for so believing. Failure to do so casts our review under the "manifest error-serious injustice" principle, i. e. whether the conduct of the Court was so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or that the accused did not have that impartial trial to which he is entitled under the law and the constitution. See *State v. Haycock,* supra, at 492. *Cf. State v. Collins,* Me., 297 A.2d 620 (1972).

■ Assuming the defendant had properly saved the two points for appeal, we find no violation of the constitutional mandate, nor of the statute, and the denial of the mistrial motions in the Court below was not error.

As regards the first incident, we cannot see the jury interpreting the Court's question as an expression by the presiding Justice that he entertained the opinion that Cindy Bachelder, the witness, was unworthy of belief. The question related to an obvious matter which undoubtedly was on the mind of each juror at the time. It is most probable that the jury, mindful of their own desire to have an answer to that very question which they themselves would have asked of the witness if allowed to do so, would not characterize the situation as an expression of opinion by the Court respecting Cindy's believability. See *State v. Rowe,* Me., 238 A.2d 217 (1968); *State v. Jones,* 137 Me. 137, 16 A.2d 103 (1940); *State v. Mathews,* 115 Me. 84, 97 A. 824 (1916); *State v. Lambert,* 104 Me. 394, 71 A. 1092 (1908).

Insofar as the second incident is concerned, we find that the Justice below could have easily explained his remark if requested, so that no possible prejudice could have resulted to the defendant. Absent such a request, the defendant cannot claim reversible error. We must view the presiding Justice's remark in the context of the situation. The State's attorney had already shown to the defendant the picture of the broken glass door of Napoli's Pizza, where the undisputed evidence supported the fact that it had been burglarized. He further had the defendant agree that Cauley Connell, the defendant's companion at the time of arrest, was drunk. Trying to add support to Connell's testimony that it was Bachelder who went into the place to bring out the stolen goods and not Connell, counsel for the State then sought an answer to the following question:

"Wouldn't you agree it would be very difficult for a person to crawl through this hole without hurting himself?"

It is on this occasion that the presiding Justice, on objection by the defense, made the remark:

"If he has an opinion, he was there—well, he's not there. He's got the picture. The picture shows the opening in the door. If the witness can give an opinion, he can."

Again, we do not view the Court's remark as an expression by the Court, as contended by the defendant, that the Justice believed the defendant was in the premises on that night. The Justice's remark was equivocal. By first saying that the defendant was "there", the Justice could very well have had reference to the fact that the defendant had been with Connell at the Hammond Street apartment, was aware of the quantity of liquor consumed by him and could by reason thereof have an opinion, whether or not Connell was too intoxicated to crawl through the broken door without hurting himself, which really was the question before the Court. But realizing the broad scope of meaning which the use of the expression "he was there" might tend to convey, the Justice, in the same breath, immediately cautioned the jury to the effect that, in relation to the issue whether or

not the defendant was in the premises that night, "well—he's not there. He's got the picture. The picture shows the opening in the door. If the witness can give an opinion, he can." It is crystal clear that the jury could not be confused into believing that the Court was expressing his opinion to the jury respecting the defendant's presence in the establishment. The reference equivocal statement, which could have been easily clarified on request, and, from all that appears, did contain its own explanation, cannot be the subject of reversible error. See *State v. Day,* 79 Me. 120, 8 A. 544 (1887); *State v. Richards,* 85 Me. 252, 27 A. 122 (1893).

## II

The defendant, in his other contention of reversible error at trial, claims that the presiding Justice incorrectly instructed the jury on the subject of the permissible inference of guilt which the jury may draw from evidence that the defendant was *in exclusive possession* of recently stolen property. The trial Justice did not use the word "exclusive" in his charge, although that word does appear in 17–A M.R.S.A. § 361(2), the pertinent statute.[4] He did instruct the jury, however, that, in order to draw the permissible inference of guilt, the jury must find that the defendant "was aware of the presence of those goods in the trunk of the car" and that "*he in some way participated in the fact that they were in the vehicle.*" (Emphasis supplied) This choice of words correctly stated the applicable law.

▮▮▮ Notwithstanding the fact that the term "exclusive" possession might, in ordinary usage, imply that a defendant must be in "sole" possession of recently stolen property in order for the permissible inference to come into play, this Court has held that joint possession of stolen property by two or more persons may be deemed the exclusive possession of any one of them where there

is evidence that the defendant "acted in concert" with the other person or persons in possession of the property as a "participant in the crime." *State v. Gove,* Me., 289 A.2d 679, 681 (1972). The inference of guilt may be drawn if the jury finds that the defendant made a "conscious assertion of possession," or that the recently stolen goods were found in a location where they were placed " 'by the act of the party [defendant] or [with] his undoubted concurrence.' " *State v. Barrett,* Me., 256 A.2d 666, 668 (1969).

▮▮▮ Here, Connell testified that the defendant was a participant in the pizza place burglary and played a role in stashing the stolen merchandise in the car trunk. Thus, there was evidence of "exclusive" possession of recently stolen property in the defendant Bachelder within the meaning of the statute. The trial Justice's instructions clearly and correctly stated the applicable law.

The entry will be

Appeal denied.

Judgment affirmed.

WERNICK, J., did not sit.

GODFREY, Justice, with whom POMEROY and NICHOLS, Justices, concur, dissenting.

I cannot agree with the majority's characterization of the presiding justice's comments and must respectfully dissent.

The state's witness, Cauley Connell, who testified in exchange for a recommendation of probation by the State, admitted burglarizing Napoli's Pizza and named appellant as his accomplice. Appellant testified that he did not accompany Connell to Napoli's Pizza on the morning in question and did not take part in the burglary. Appellant's testimony was corroborated by three other defense witnesses, including his sister,

---

4. 17–A M.R.S.A. § 361(2) provides:

"Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as

the case may be, and proof that the theft or robbery occurred under circumstances constituting a violation of section 401 also shall give rise to a presumption that the defendant in exclusive possession of property recently so taken is guilty of the burglary."

Cindy, and her friend, Sonya Gordon, whose credibility was thus of crucial importance to the defense.

Cindy and Sonya testified that on the morning of appellant's arrest, while they were clearing out their apartment in preparation for vacating it later in the day, they found in a trash container outside the apartment building eight or ten cases of beer which they carried up to their apartment on the top floor. The presiding justice interrupted the direct examination of Cindy to interrogate her as follows:

"THE COURT: When were you planning to move out that day?

THE WITNESS: Oh, in between probably eight and two, whenever we got out, early morning.

"THE COURT: But you brought eight or nine or ten cases up to the top floor of the building of the apartment you were going to move out of?

THE WITNESS: Uh-hum."

That intervention by the trial justice cannot be justified as "clarifying a confused evidentiary situation" or "bringing forward overlooked essential facts." *State v. Annis,* Me., 341 A.2d 11 (1975). The majority cannot see how the jury could interpret the justice's questioning "as an expression of opinion by the Court respecting Cindy's believability." I do not see how the justice's second question could be interpreted by the jury to signify anything other than disbelief or doubt.

The Maine Legislature has made it clear that during the trial, the presiding justice shall not express an opinion on issues of fact arising in the case. 14 M.R.S.A. § 1105 (1978–79 Supp.). Such an expression of opinion is sufficient cause for a new trial in a criminal case if the defendant thereby aggrieved desires it. The appellant asserts that he was aggrieved by the presiding justice's questioning, which manifested disbelief in the testimony of a key witness for the defense. I am satisfied that his claim is well founded and would set aside the conviction and order a new trial.

I am authorized to state that Justices Pomeroy and Nichols join in this dissent.