**STATE of Maine**

v.

**Jeffrey VARNEY.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1993.

Decided May 3, 1994.

David W. Crook, Dist. Atty., Alan P. Kelley (orally), Asst. Dist. Atty., Augusta, for State.

Steven T. Blackwell, Peter B. Bickerman (orally), Lipman and Katz, P.A., Augusta, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

DANA, Justice.

Defendant Jeffrey Varney appeals from a judgment entered in the Superior Court (Kennebec County, *Perkins, J.*) on a jury verdict, convicting him of gross sexual assault, 17–A M.R.S.A. § 253 (Supp.1993). Varney contends that the court erred in denying his motion for a bill of particulars and his motion in limine, and committed obvious

error in its comment on a defense exhibit and in its jury instructions. We affirm the judgment.

## I. *Facts*

In May 1991, Varney was charged with two counts of gross sexual assault, 17–A M.R.S.A. § 253.[1] The indictment alleged that he engaged in sexual acts with his daughter on or about March 1 and 21, 1991. Varney entered pleas of not guilty to both counts. Prior to the trial, Varney filed a motion for a bill of particulars, requesting "details as to the time, date, place and manner in which the offenses are alleged to have been committed." The Superior Court (*Browne, A.R.J.*) denied the motion. Varney later filed a motion in limine to exclude evidence of any uncharged sexual acts, which the Superior Court (*Perkins, J.*) also denied.

During the trial, Varney's daughter testified that on or about her eighth birthday (December 16, 1990), Varney started to touch her "private parts." These episodes occurred exclusively on Thursday nights after her mother left the house to go bowling and almost always occurred in the bathroom. The daughter testified that Varney used his hands, mouth and penis to touch her private parts, though there was apparently no penetration. She further testified that these acts happened "a lot," but she could not specify exact dates. The acts ceased on March 29, 1991, after the daughter told her teacher what had happened.

Varney presented evidence to show that he could not have committed any sexual acts with his daughter during the period in question because he was either at work or at a bowling alley with his wife. According to the wife and her teammates, Varney usually arrived at the bowling alley at about 6:45 p.m. and joined them for dinner during a bowling break. Sometimes Varney did not show because he was working late. The wife testified that on Thursday, March 21, 1991, she and her husband attended a party, and then went directly to the bowling alley. On Thursday, March 28, however, Varney did

not arrive at the alley until 8:00 p.m., and the daughter was home that night.

The project manager for Varney's employer testified that Varney generally worked from 7:00 a.m. to 4:00 p.m., although he occasionally worked later. The wife testified that Varney normally left the house at 4:00 a.m. and did not return until 6:00 or 7:00 p.m.

The jury found Varney guilty of both counts of gross sexual assault. The court sentenced him to eight years imprisonment, with all but four and one-half years suspended, and three years probation. Varney timely filed this appeal.

## II. *Pretrial Motions*

■ Varney argues that the trial court erred in denying his motion for a bill of particulars because it impeded his ability to present a defense and prejudiced him as a result. *See State v. Cote*, 444 A.2d 34, 36 (Me.1982) (the purpose of a bill of particulars is to enable the defendant to prepare an adequate defense and to avoid prejudicial surprise at trial). Had he been provided with the exact dates of the alleged sexual acts, as requested, he would have been better able "to disprove his opportunity to commit each offense."

We have repeatedly held that the State is not required to file a bill of particulars when "it cannot pinpoint the date of an alleged offense with any greater specificity than it has in the indictment." *State v. Gagne*, 554 A.2d 795, 797 (Me.1989); *see also State v. Marr*, 536 A.2d 1108, 1109 (Me.1988). Because Varney's daughter was unable to specify the exact dates on which the alleged acts occurred, the court did not abuse its discretion in denying the motion. *See Marr*, 536 A.2d at 1109; *State v. Greene*, 512 A.2d 330, 334 (Me.1986).

■ Varney next argues that he suffered substantial prejudice when the trial court denied his motion in limine seeking to prevent the admission of testimony concerning sexual acts that did not occur on the dates specified in the indictment (i.e., "on or about"

---

1. Title 17–A M.R.S.A. § 253(1)(B) provides that "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years."

March 1 and March 21, 1991). Defense counsel failed to object to the admission of that testimony at trial, however, and absent an objection at trial a motion in limine does not preserve the issue for appeal. *See State v. Pinkham*, 586 A.2d 730, 731 (Me.1991) (ruling on motion in limine is advisory only). We therefore review the admission of this testimony for obvious error. *State v. Tapley*, 598 A.2d 1190, 1192 (Me.1991).

The State correctly points out that evidence of uncharged sexual activity between a defendant and victim may be admissible to show motive, intent, or opportunity to commit the offense. *See State v. DeLong*, 505 A.2d 803, 806 (Me.1986). Accordingly, the trial court did not commit obvious error when it admitted testimony of acts that could not be tied to the dates specified in the indictment. *See id.*

### III. *Comment on the Evidence*

After defense counsel examined Varney's supervisor regarding records of Varney's work hours for March 7 and 14, 1991, he moved for their admission. Over the State's objection, the court admitted the records, and then commented, "for whatever marginal relevance they may have I am going to admit them, noting you may argue whether they have any relevance at all obviously."

On appeal, Varney argues that the court violated 14 M.R.S.A. § 1105 (1980), which prohibits the court in a jury trial from "express[ing] an opinion upon issues of fact arising in the case." Because Varney's counsel did not object to the trial court's comment, our review is limited to "manifest error-serious injustice," whereby we must consider whether the conduct of the trial court was "so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or that the accused did not have that impartial trial to which he is entitled under the law and the constitution." *State v. Bachelder*, 403 A.2d 754, 760 (Me.1979).

■ Varney argues that the purpose of the exhibits was to demonstrate his whereabouts on two Thursdays in March 1991, and was integral to show that he did not have the opportunity to commit the offenses charged. By commenting that the exhibits had marginal relevance, the trial justice usurped the role of the jury and disparaged Varney's theory of the case.

Although the trial court's use of the word "marginal" may have been ill-advised, the complained-of statement does not violate section 1105 because it related to the *uncontroverted* fact that Varney worked on March 7 and 14, 1991, until 4:00 or 4:30 p.m. *See State v. Kessler*, 453 A.2d 1174, 1176 (Me. 1983) (section 1105 only applies to controverted facts). The court's statement does not constitute obvious error.

### IV. *Jury Instructions*

■ Varney argues that the trial court erred when it instructed the jury that a reasonable doubt is "a doubt for which you can assign a logical reason." Because he failed to object to this instruction at trial, we review only for obvious error. M.R.Crim.P. 52(b). In order to grant him relief, we must conclude that any error made was so "highly prejudicial to the defendant and so tainted the proceeding as virtually to deprive the aggrieved party of a fair trial." *State v. Uffelman*, 626 A.2d 340, 342 (Me.1993) (quoting *State v. Pierce*, 438 A.2d 247, 252 (Me. 1981)). Although the instruction in the present case is not a model of clarity, we do not believe that the trial court committed obvious error.

Varney argues that the trial court's repeated use of "logical reason" improperly diluted the State's burden of proof, because a "logical" doubt is significantly different from a "reasonable" one. According to Varney, even if jurors had a reasonable doubt, they were instructed to find him guilty unless a *logical* reason could be found to support it. We disagree.

In reviewing a jury instruction, we must review the entire charge, "taking into consideration the total effect created by all the instructions and the potential for juror misunderstanding." *State v. Cote*, 462 A.2d 487, 490 (Me.1983). Our review of the entire instruction leads us to the conclusion that "logical reason" was clearly defined as *not* being "a mystical doubt," "a whimsical doubt," "a fanciful doubt," or "a made-up

doubt." In other words, a logical reason had to be based on something that the jurors observed during the trial. We have previously approved similar instructions. *See State v. Poulin,* 277 A.2d 493, 496 (Me.1971) ("a reasonable doubt is not a whimsical doubt, fanciful or imaginary," but is a doubt "for which one has a reason"); *State v. Merry,* 136 Me. 243, 262, 8 A.2d 143, 153 (1939) ("a reasonable doubt is not a vague, fanciful or speculative doubt, but a doubt arising out of the case as presented, for which some good reason may be given"); *cf. Victor v. Nebraska,* — U.S. —, —, 114 S.Ct. 1239, 1247–49, 127 L.Ed.2d 583 (1994) (reasonable doubt instruction upheld where it "told the jurors that their conclusion had to be based on the evidence in the case"). We therefore hold that the "logical reason" instruction in this case was not obvious error.

Varney also complains of the "roadmap" that the court laid out for the jury. He asserts that the court told the jury that it could convict him "notwithstanding the existence of reasonable doubts if it was convinced that it was almost certain that the crime had been committed by him." We disagree with this characterization of the instruction. What the court told the jury was to engage in the following three-step analysis:

(1) to distinguish between "credible" evidence, and evidence that is "not credible";

(2) to consider any doubts "of a reasonable nature" that may have been generated from the credible evidence; and

(3) if convinced that it is "almost certain that the crime has been committed ... and the defendant has perpetrated it," to find the defendant guilty; or, in the alternative, if a doubt (to which a logical reason could be assigned) remained, to find the defendant not guilty.

Contrary to Varney's contention, those instructions do not direct the jury to find guilt even if it retains a reasonable doubt, and thus the court did not commit obvious error.

Although Varney raises additional complaints with the court's instructions, none

rises to the level of obvious error. The entry is:

Judgment affirmed.

All concurring.