**STATE of Maine**

v.

**Chester PHILBRICK.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 17, 1995.

Decided Dec. 19, 1995.

Norman R. Croteau, District Attorney, Auburn, for the State.

Alan E. Lobozzo, Auburn, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Chester Philbrick appeals from the judgments of conviction on two counts of gross sexual assault, 17–A M.R.S.A. § 253(1)(B) (Supp.1995) (Class A),[1] entered in the Superior Court (Androscoggin County, *Delahanty, C.J.*) following a jury trial. He contends that (1) he should have been permitted to testify about his lack of a criminal record, (2) the evidence was insufficient to support his conviction on the second count, and (3) the court's reference to the stepdaughter as "the victim" deprived him of a fair trial. We affirm the judgments.

Philbrick was indicted on two counts of sexual assault stemming from incidents that occurred with his stepdaughter on or about January 1993 (Count I), and on or about December 1992 (Count II). At the trial, the stepdaughter testified about two occasions during her sixth grade year when Philbrick

1. The statute provides in pertinent part:

    1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

    ....

    B. The other person, not the actor's spouse, has not in fact attained the age of 14 years.

17–A M.R.S.A. § 253(1)(B) (Supp.1995). "Sexual act" means

Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; ....

17–A M.R.S.A. § 251(1)(C)(1). "A sexual act may be proved without allegation or proof of penetration." *Id.* § 251(1)(C).

engaged in sexual contact with her. Both incidents happened in the trailer where the family lived. She testified in detail about the last incident, contained in Count I of the indictment, which occurred during her school vacation.[2]

When asked "when was the next time before that day that anything like that had ever happened," she stated, "I think like about a week or two before that." She testified that Philbrick's "private" touched her "private," with no clothing in between, but that she "[didn't] remember because it's fuzzy." She was "not actually sure" that Philbrick put his penis in her private, because "[m]ost of the time [she] was trying to get away." She also testified that this type of touching had been going on once every two weeks since she was five or six years old.

Dr. Lawrence Ricci, director of the child abuse program at the Spurwink Clinic in Portland, testified that his examination of the stepdaughter was normal except for a very thin part in her hymenal border. This finding was "consistent with previous penetrating trauma such as a penis or a digit."

Philbrick testified in his own defense and denied any sexual contact with his stepdaughter. Defense counsel asked him if he had any criminal convictions. The trial court sustained the State's objection to the question as irrelevant. The court also sustained an objection to defense counsel's inquiry whether Philbrick had ever been arrested.

During the first recess, the trial court was notified that one of the jurors realized that his daughter had played with the stepdaughter while she was living with a foster family next door. After excusing the juror, the court explained to the jury that that juror "indicated that he knew *the victim* in this particular case. When we did voir dire he didn't recognize the name. Once she came in

and testified then he put the face together with the name.... He has been excused." (Emphasis added.)

### I.

██ Philbrick argues that the court impermissibly refused to allow him to testify that he had no criminal record and that the refusal was harmful error. Philbrick relies on *State v. Cocco,* 628 A.2d 1025 (Me.1993), in contending that he is entitled to introduce the absence of criminal convictions on the issue of his credibility. His reliance is misplaced. In *Cocco,* we concluded that it was error for the trial court not to permit the defendant to testify that he had no criminal record. There is dicta in *Cocco* that could be misconstrued as always allowing a defendant to introduce evidence of the absence of criminal convictions as a corollary to M.R.Evid. 609.[3] Our holding in *Cocco* is more limited, however, and must be understood within the context of the facts of that case. *Cocco's* attempt to testify that he had never been arrested or convicted of any other crime came immediately after he had explained to the jury that he learned of the charges against him when he was about to be released from the county jail. Although he was serving only a three-month sentence for motor vehicle violations, the jury was left with a negative false impression about his criminal record. In this context, we found the intimation of a criminal record that *Cocco* did not have to be harmful error. *Id.* at 1206

In this case, Philbrick's testimony did not generate the need for clarification regarding his prior criminal record. The question about his prior convictions was not designed to negate prejudicial testimony just given by Philbrick. Rather, it was offered on the likelihood of Philbrick's guilt. Because evidence of the lack of a criminal record is not

---

2. Both sides concur that this event happened in January. Philbrick does not contend that the evidence supporting his conviction on Count I is insufficient.

3. M.R.Evid. 609(a) provides:
   (a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a specific crime is admissible but only if the crime (1)

was punishable by death or imprisonment for one year or more under the law under which the witness was convicted, or (2) involved dishonesty or false statement, regardless of the punishment. In either case admissibility shall depend upon a determination by the court that the probative value of this evidence upon witness credibility outweighs any unfair prejudice to a criminal defendant or to any civil party.

evidence of character or of a character trait, *see* M.R.Evid. 404,[4] nor provided in the form of reputation testimony, *see* M.R.Evid. 405,[5] there was no error nor abuse of discretion in the court's decision to exclude it.[6] *See State v. Robinson*, 628 A.2d 664, 666 (Me.1993) (question of relevance of evidence reviewed for clear error; question of admissibility frequently reviewed for abuse of discretion).

## II.

■ Philbrick next contends that the evidence of the December 1992 incident was insufficient to support his conviction on Count II. On a sufficiency challenge, we review "the evidence in the light most favorable to the State to determine whether a jury could rationally find every element of the criminal charge beyond a reasonable doubt." *State v. Philbrick*, 551 A.2d 847, 852 (Me. 1988) (citing *State v. Barry*, 495 A.2d 825, 826 (Me.1985)).

■ To sustain a conviction for gross sexual assault, the prosecution was not required to prove penetration, but "only that direct physical contact between the sex organs has occurred." *State v. Hebert*, 480 A.2d 742, 747 (Me.1984); 17-A M.R.S.A. § 251(1)(C). Here, the first incident of sexual touching about which the stepdaughter testified was the final incident, in January 1993. She subsequently testified about the prior incident, placing it in time approximately two weeks before the January incident

occurred. Although her memory of the first incident was "fuzzy," she clearly remembered and testified that Philbrick's "private" touched her "private" without any clothing in between.[7] It has long been the case in Maine that the "uncorroborated testimony of a victim, if not inherently improbable, incredible or lacking a measure of common sense, is sufficient to sustain a guilty verdict for a sexual crime." *Philbrick*, 551 A.2d at 852; *State v. Hoffstadt*, 652 A.2d 93, 95 (Me.1995).

The stepdaughter's testimony contained no objective impossibilities, nor any "gross, unexplained self-contradictions," *State v. Preston*, 581 A.2d 404, 409 (Me.1990), that would require the conviction to be vacated. Viewed in the light most favorable to the State, she clearly related facts sufficient for the jury rationally to decide that Philbrick engaged in a sexual act with her on or around December 1992.

## III.

■ Philbrick's final contention is that the trial court's reference to the stepdaughter as "the victim" when the court was explaining to the jury why a juror had been excused constituted a violation of his right to an impartial trial. We are not persuaded by his argument.

A defendant is guaranteed an impartial trial by the United States and Maine Constitutions.[8] This guarantee encompasses "im-

---

**4.** M.R.Evid. 404 states in pertinent part:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
>
> (2) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

We also note that even if evidence of the lack of a criminal record were proper character evidence, the evidence in this case was not provided in the form of reputation testimony pursuant to M.R.Evid. 405 ("In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation.")

**5.** M.R.Evid. 405 states:

> **(a) Reputation.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> **(b) Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

**6.** We do not decide in this case whether the absence of a criminal record may ever be relevant on the issue of the credibility of a witness.

**7.** The stepdaughter previously testified that she meant vagina when she referred to her "private."

**8.** Me. Const. art. I, § 6 provides in pertinent part that "[i]n all criminal prosecutions, the accused shall have a right ... [t]o have a speedy, public

partiality on the part of the trial judge, [both] in word [and] conduct." *State v. Bachelder*, 403 A.2d 754, 758 (Me.1979). Thus, a trial justice is prohibited from "expressing an opinion upon issues of fact arising in [a] case." *Id.* at 756; *see also* 14 M.R.S.A. § 1105 (1980) (implemental legislation definitively protecting defendant's rights to impartial trial).[9] It is of "paramount concern ... that [a] judge not participate in any manner from which the jury may infer that he endorses the cause of one side."[10] *State v. Pickering*, 491 A.2d 560, 564 (Me.1985); *State v. Discher*, 597 A.2d 1336, 1340 (Me. 1991). Any such expression by a court generally "is sufficient cause for a new trial at the request of the aggrieved party." *Marston v. Newavom*, 629 A.2d 587, 591 (Me. 1993); *State v. Linnell*, 408 A.2d 693, 695 (Me.1979).

Because Philbrick failed to make a timely objection to the trial court's statement at trial, we review for a manifest error or a serious injustice. *Bachelder*, 403 A.2d at 760; *State v. Varney*, 641 A.2d 185, 187 (Me.1994); M.R.Crim.P. 52(b). We will not vacate a conviction unless the conduct of the trial court was "so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or that the accused did not have that impartial trial to which he is entitled under the law and the constitution." *Bachelder*, 403 A.2d at 760. The "failure to object ... will itself be a consideration in determining whether the error is obvious and highly prejudicial." *State v. True*, 438 A.2d 460, 468 (Me.1981).

Although the trial court's reference should have been to the witness by name, or to the alleged victim rather than to the victim, it was not so one-sided or disparaging to Philbrick that it constituted a serious injustice. In the context of the court's explanation, it cannot be said that the jury would assume the court had taken a position on her credibility and whether she actually was the victim of sexual abuse. *See State v. Linnell*, 408 A.2d at 694–95 (judge's comment that he did not think that there was much basis for justification defense was comment upon an issue of fact in a manner disparaging defendant's theory of case). Moreover, the court did refer to her as the "alleged victim" during its final instructions to the jury, as well as in instructing it that "the determination of the facts as to what did or did not happen in this case is your exclusive prerogative as a jury. I have no valid authority or control over you so far as your determination of the facts is concerned." Because the reference was not so prejudicial and calculated to result in injustice that an unjust verdict would inevitably result, we need not vacate the conviction. *See Bachelder*, 403 A.2d at 760.

Judgments affirmed.

All concurring.

---

and impartial trial...." This provision mirrors U.S. Const. amend. VI.

**9.** Section 1105 provides:
During a jury trial the presiding justice shall rule and charge the jury, orally or in writing, upon all matters of law arising in the case but shall not, during the trial, including the charge, express an opinion upon issues of fact arising in the case, and such an expression of opinion is sufficient cause for a new trial if either party aggrieved thereby and interested desires it, and the same shall be ordered ac-

cordingly by the law court on appeal in a civil or criminal case.
14 M.R.S.A. § 1105 (1980).

**10.** For example, the court may not give a one-sided summation of the evidence, emphasize specific evidence in a case in a way that suggests endorsement of one side's cause over the other, disparage the accused's theory of the case, or create an impression that it doubts the defendant's veracity. *State v. Bachelder*, 403 A.2d 754, 759 (Me.1979) (citing cases).